No. 14,105.

WILLS *v.* THE PEOPLE.
(66 P. [2d] 329)

Decided March 8, 1937.

128

Mr. Charles H. Woodard, Mr. George H. Blickhahn, for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. Walter F. Scherer, Assistant, for the people.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

Plaintiff in error, hereinafter referred to as the defendant, was convicted of statutory rape and sentenced

to a term of from nine to fifteen years in the penitentiary. He asks for a review of that judgment, that his writ be made a supersedeas and that the judgment of the lower court be reversed. He makes thirty-seven assignments of error, which are more or less cumulative, but the points he relies on for reversal are summed up in the following: (1) Failure of the court to require the state to elect date relied upon for conviction upon motion of the defendant; (2) permitting the asking of leading questions by the district attorney; (3) misconduct of the spectators; (4) misconduct of the district attorney; (5) that no definite date was selected or proved on which the alleged offense took place; (6) refusal of defendant's exhibits, and (7) instructions.

In the information it was stated "that, on or about the sixteenth day of February, A. D. 1935, at the said county of Mineral, in the state of Colorado, Frank Wills, who was then and there a male person over the age of eighteen years, did then and there unlawfully and feloniously carnally know one * * * [Miss Y, a minor], who was then and there an unmarried female person under the age of eighteen years, to wit: of the age of sixteen years, and who was not then and there the wife of the said Frank Wills; contrary, etc."

The affidavit to the information was signed by John L. McMenamin, superintendent of the State Home for Dependent and Neglected Children, and the prosecuting witness was the girl upon whom the alleged crime was committed.

The facts were substantially as follows: The defendant and his wife owned and operated a tourist ranch on the Rio Grande river west of Creede, in Mineral county, and also a fishing lodge at Ruby Lake about fifteen miles away. In the spring of 1934 the defendant made application to the state home for a girl to be the companion of his daughter. After considerable correspondence and an investigation the prosecuting witness and her younger sister, sixteen and fourteen years old respectively, were

sent to the Wills ranch. They were never legally adopted by the Wills.

The girls were given ponies and taught to ride and soon were accompanying the defendant on various trips acting as guides to the tourists, particularly Miss Y, the older of the two girls. Frequently it was necessary for them to stay away over night and the defendant admitted sleeping in the same bed with Miss Y on these occasions, but denies ever having sexual intercourse with her. One particular occasion allegedly took place in the bunk house on the ranch on or about March 26, 1935. In the spring of 1935 Miss Y became pregnant and she had a baby on the 14th of November of that year. Upon being advised of what had happened, Superintendent McMenamin had the girls brought back to Denver and filed the charge which resulted in the defendant's conviction.

During the trial when the state was about half through with its case counsel for defendant asked that the district attorney "be compelled to elect on what date he seeks a conviction in this case," to which the court responded that he might renew his motion at the close of the state's case.

At the conclusion of the state's case the district attorney elected to rely on the offense in the bunk house on or about March 26, 1935, and the jury was so advised before the defense began its case. This being true it does not violate the rule in the Laycock case: "That the selection should be made before defendant is compelled to proceed with his defense, all the authorities agree, but whether it should be made before the people introduce any evidence, or at the close of the people's case, or during the progress of the trial if other transactions are developed, the authorities do not seem to be in harmony. The matter rests largely in the discretion of the trial court, and in most cases it would be better for the court to permit the evidence to proceed far enough to identify the transaction upon which the people rely for a conviction before

compelling a selection." *Laycock v. People,* 66 Colo. 441, 444, 182 Pac. 880.

■ During the direct examination of the prosecuting witness it apparently became necessary, because of her confusion, to ask some leading questions which the court permitted. They had to do with the delicate and intimate circumstances concerning the perpetration of the act being relied upon for conviction, and it is not surprising that a seventeen year old girl would be somewhat reluctant to answer such questions. We feel that it was well within the court's power to do this. *Polochio v. People,* 76 Colo. 574, 233 Pac. 833, and *Wickam v. People,* 41 Colo. 345, 93 Pac. 478.

■ Counsel for defendant complain of a demonstration made by those in the court room during the argument by the district attorney, and that the court erred in not declaring a mistrial. When the demonstration took place the court immediately warned the spectators and advised the jury to disregard it. No authority is cited by counsel for defendant on this point, and we feel that what the court did on this occasion is a sufficient compliance with the general rule laid down in section 2059, 16 C. J., p. 810, to the effect that where "the court counteracts any prejudice that might be caused thereby [*conduct of bystanders*] by promptly taking steps to suppress the improper conduct and prevent its repetition, by reprimanding or punishing the bystanders who participated therein, and by directing the jury not to give it any attention but to decide the case according to the evidence," there is no ground for reversal (Italics are ours).

■ Also during the closing argument the district attorney made a facetious remark about defense counsel as follows: "That the defendant had as his counsel, Chas. H. Woodard, one of the best qualified and one of the most experienced attorneys in the 12th judicial district, who in fact was so good and so well qualified that he was no longer able to stay within the 12th judicial district; that he was too big for said district and therefore, had moved

to Colorado Springs, leaving the said 12th judicial district.'' We certainly do not approve of such remarks, but cannot conceive of how it could have prejudiced the defendant.

■ Defendant's counsel further complain that there was no definite date fixed. Our law does not require it. The district attorney chose to rely on the alleged offense which took place ''on or about the 26th day of March.'' The testimony on that point was as follows:

''Q. During the latter part of February, 1935, or the early part of March, 1935, did you go to the bunk house with Mr. Wills? A. I imagine I did.

''Q. Now to fix the date if we can, I will ask you if you didn't go with him to the bunk house a few days or a few weeks before Francis Davis started to work on the 1st day of April? A. Yes.

''Q. Now you said that sometime before the first day of April Frank Wills went to the bunk house with you or you went with him and upon that occasion you had intercourse with him there? A. Yes.''

It is true that this does not fix the date with a certainty that is desirable, but we feel that it is sufficiently definite for the purposes of this case. It is reasonable that the prosecuting witness would know definitely that the witness, Francis Davis, went to work on the first day of April, 1935, and that she would fix the occasion of her experience in the bunk house as approximately of that time. We feel that the time was sufficiently fixed within the language of ''on or about the 26th of March.''

■ Defendant's counsel also complain about the trial court refusing to admit a post card and some letters as evidence to prove that someone else might have had intercourse with the prosecuting witness. For example, the post card which the prosecuting witness sent to the defendant after she was in the hospital had this question on it: ''Have they found Jack S yet?'' When asked about this question the prosecuting witness said she did not know any such person, nor was there any attempt

made by counsel for the defendant to produce anyone who claimed to have had intercourse with her during the time she was staying with the Wills. There was no foundation laid for the introduction of this evidence and it is quite apparent that no such foundation could be laid. They were properly excluded.

■ There was no error in the ruling of the trial court refusing to give requested instructions, on which refusal error is assigned by counsel for defendant, because their content was sufficiently covered by instructions given by the court.

Counsel for defendant invokes the oft quoted language of Lord Hale, spoken in behalf of men accused of rape to the effect that it is "an accusation easily made and hard to be proved, and harder to be defended by the party accused though ever so innocent." But that beneficent cloak may not be thrown around the shoulders of the defendant here. Whatever right he may have had to its protecting shelter was thrown away when he admitted that he had on various occasions slept in the same bed with this girl.

We have gone over the record carefully and find no prejudicial error. Defendant was represented by able counsel, who did all that could be done for their client. We are satisfied defendant had a fair trial.

The judgment is affirmed.