## No. 22287.

KENNETH BUSEY NOWELS *v.* THE PEOPLE OF THE STATE
OF COLORADO.
(442 P.2d 410)

Decided June 17, 1968. Rehearing denied July 15, 1968.

COGSWELL & WILLS, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES F. PAMP, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

KENNETH BUSEY NOWELS, age 71, was charged in a three count information with the crime commonly known as taking indecent liberties. C.R.S. 1963, 40-2-32 was repealed and reenacted by the General Assembly in 1965 and the particular statute under which this criminal proceeding was prosecuted now appears as 1965 Perm. Supp., C.R.S. 40-2-32.

In the language of the statute, as thus repealed and reenacted, in the first count of the information Nowels was charged with taking indecent liberties on or about May 12, 1965 with the person of one Eloise————, who was then under 16 years of age. In the second count Nowels was charged with taking indecent liberties on or about May 12, 1965 with the person of Lois————, who was also then under 16 years of age. And in the third count Nowels was charged with taking indecent liberties on or about May 15, 1965 with the person of Jean ————, who was then under 16 years of age.

The original information was filed on May 21, 1965. One week later Nowels entered a plea of not guilty by reason of insanity and the trial court appointed a Dr. Brady to examine him and make a report of his findings to the court. Nowels apparently desired that additional doctors be appointed to examine him and in connection therewith he evidently offered to pay not only the

expense attendant to the appointment of additional doctors, but also the expense of his hospitalization while the various examinations were being conducted. In any event the trial court appointed Drs. Draper and Conde to also examine Nowels and report their findings to the court.

On June 25, 1965 the three doctors above referred to made their separate and individual reports to the trial court, and the conclusion reached by each was that Nowels was sane. On July 16, 1965 Nowels was permitted to enter a general plea of not guilty to each count of the information and his request that his sanity trial be held first was granted.

The sanity trial was set for October 29, 1965. However, on that date Nowels filed a petition with the trial court wherein counsel alleged that as of that date Nowels was afflicted with insanity which had developed *subsequent* to the time of the alleged commission of the crimes with which he was charged, and request was made that a jury be impaneled to determine whether Nowels "is presently insane." This petition was supported by the affidavit of a Dr. Warren H. Walker, who stated therein that Nowels was then "insane" under the statutory test set forth in C.R.S. 1963, 39-8-6 and that in his opinion this "particular insanity had developed subsequent to the alleged criminal acts."

Thereupon the trial court vacated the trial setting and ordered Drs. Brady and Draper to again examine Nowels in order to determine whether he was "now insane" and to report all findings to the court.

On November 12, 1965 Drs. Brady and Draper reported to the court that Nowels was still sane and had not become insane since their earlier examination. Thereupon Nowels withdrew his plea of insanity *since* the trial of the alleged commission of the crime, but persisted in his other pleas of not guilty and not guilty by reason of insanity *at the time* of the alleged commission of the crime.

The case came on for trial on the issue of insanity on February 8, 1966. A three-day trial culminated in a jury verdict finding Nowels sane.

Thereafter, trial of the issues raised by the general plea of not guilty began on March 15, 1966, and culminated on the following day with the jury's determination that Nowels was guilty of each of the three counts contained in the information. Motion for new trial was in due time filed, and thereafter denied; whereupon the trial court, pursuant to C.R.S. 1963, 39-19-1, et seq. sentenced Nowels to a "one day to life sentence" in the state penitentiary. By writ of error Nowels now seeks reversal of the sentence thus imposed upon him and as grounds therefor claims that the trial court erred in some six particulars. We shall now consider the several matters urged by Nowels, though we shall group Nowels' six assignments of error under four headings.

I.

Nowels first contends that the trial court erred in its refusal to grant his several motions for a change of venue. On July 7, 1965, which was about six weeks after he had been arrested and formally charged with the taking of indecent liberties, Nowels first asked the court for a change of venue. The basis for the request was a belief that he could not receive a fair trial in El Paso County, and in connection with the motion Nowels attached a series of news articles appearing in one of the local Colorado Springs papers. Also attached were various affidavits wherein the affiants, at least, concluded that Nowels could not receive a fair and impartial trial in El Paso County. The district attorney thereafter also filed counter-affidavits. Upon hearing, this motion was denied. Trial of the matter did not thereafter take place until some seven to eight months later. However, just before the trial of the sanity issue, as well as just before trial of the case upon its merits, counsel again filed a motion for a change of venue. Each of these was also denied by the trial court.

The record on error as it relates to the sanity trial contains only a bit of the voir dire examination of prospective jurors. However, there is nothing contained therein to indicate that as a result of any massive pre-trial publicity the general climate was such that Nowels could not obtain a fair trial.

As concerns the trial of the case on the issues raised by the general plea of not guilty, the record does not contain any of the voir dire juror examination. Nor do we know how many of Nowels' preemptory challenges were used in either trial.

In *Martz v. People,* 114 Colo. 278, 162 P.2d 408, we held that the question as to the existence of prejudice such as would dictate the granting of a motion for a change of venue is one of fact, and rests within the sound discretion of the trial court. Also, in that case, we observed that if prejudice exists, it should show up in the voir dire examination of prospective jurors. Certainly, the *Martz* case is adequate authority for holding that in the instant case there was no abuse of discretion by the trial court in its denial of the motion for a change of venue.

Counsel argues, however, that though voir dire juror examination perhaps did not disclose great and widespread prejudice by the populace of El Paso County, and even though the actual trials were admittedly not of Roman Holiday variety, nevertheless Nowels was denied due process because the "totality of the circumstances raises the probability of prejudice." *Sheppard v. Maxwell,* 384 U.S. 333, 86 S. Ct. 1507, 16 L.Ed. 2d 600.

In our view of the matter the instant case does not fit into the *Sheppard v. Maxwell* mold, as the record before us does not reveal "massive, pervasive and prejudicial publicity" of the extreme character described in the *Sheppard* case. We conclude therefore that Nowels was not denied due process because of pre-trial publicity nor was it error on the part of the trial court to

deny his several motions for a change of venue. *Bell v. People,* 163 Colo. 350, 431 P.2d 30, and *Corbett v. People,* 153 Colo. 457, 387 P.2d 409.

II.

Nowels next contends that the trial court erred in two particulars in its conduct of the sanity trial. The sequence of the presentation of evidence during the sanity trial was as follows: the People in their so-called case in chief called no witness and relied upon the presumption of sanity; defense counsel then called three witnesses, namely Nowels' sister, a Dr. Hobbs who was a clinical psychologist, and a Dr. Walker, who was a psychiatrist; and the People by way of rebuttal testimony then called the two police officers who had arrested Nowels and Drs. Draper, Brady and Conde, all psychiatrists who had theretofore been appointed by the trial court to examine Nowels.

Upon trial, Dr. Walker testified in behalf of Nowels and he stated that in his opinion Nowels was insane as of the date of the alleged commission of the crime, and based his opinion on the examination made by him of Nowels in October 1965. He specifically pinpointed Nowels' mental disorder as being senile psychosis.

When Drs. Draper and Brady were later called as rebuttal witnesses by the People, each — over objection — was permitted to apprise the jury that he had examined Nowels in October 1965 as well as in June 1965. As concerns his October examination of Nowels, Dr. Brady mentioned that his testing of Nowels on that occasion produced the same results as did his June examination. Dr. Draper based his opinion that Nowels was sane upon all of his examinations of Nowels, in other words the examinations occurring in both June and October 1965. Also, Dr. Draper testified in some detail as concerns his October examination in an effort to meet the testimony of Dr. Walker, who had previously testified that as a result of his examination of Nowels, also made in October, Nowels was suffering from senile psychosis.

Counsel claims that it was error for the trial court to permit either Dr. Draper or Dr. Brady to make any mention of the fact that each had reexamined Nowels in October. It is said that C.R.S. 1963, 39-8-6 bars the use of such testimony *except* in a trial to determine whether a defendant has become insane *after* the alleged commission of a crime.

■ Our examination of C.R.S. 1963, 39-8-6 fails to disclose any statutory prohibition of the type now urged upon us by counsel. To be sure the statute does impose certain limitations in connection with the use at the trial of the issue of guilt or innocence of "substantive evidence" or "information" acquired "directly or indirectly for the first time as the result of any such examination," be it an examination in connection with a plea of insanity *at the time* or a plea of insanity *after* the alleged commission of the crime. But we find no statutory direction which would prohibit Drs. Draper and Brady from testifying that they had examined Nowels in October 1965 and relating the results thereof. There being no such statutory prohibition, under the circumstances of this case we most certainly are not inclined to impose any such judicially created prohibition.

■ As concerns the sanity trial, error is also assigned to the failure of the trial court to sustain an objection to a hypothetical question propounded by the district attorney in his cross-examination of Dr. Walker. In response to the hypothetical question, Dr. Walker stated that he just couldn't answer the question without making an examination. In view of the answer thus given, we fail to see how any prejudicial error could have occurred.

The hypothetical question contained therein some of what the district attorney obviously believed to be the facts and circumstances surrounding the crime with which Nowels was charged, and the objection to the hypothetical question was on the ground that there was nothing in the record to form any basis for the question thus propounded. At the time the question was put to

the witness, there probably was nothing in the record to warrant the question. But it should be remembered that all of the People's evidence in the sanity trial came by way of rebuttal. And Drs. Draper and Brady, particularly the latter, related in some detail the various acts of indecent liberties which Nowels perpetrated upon the three girls whom he was accused of assaulting and the circumstances attendant thereto. It should be remembered that the question was a part of cross-examination and some leeway is permitted in cross-examination. Suffice it to say the refusal of the trial court to sustain an objection to a hypothetical question which the witness then declined to answer, is not such error, if it be error, as would dictate a second trial of this matter.

### III.

 Error is next assigned to certain rulings of the trial court occuring during the trial of the issue of Nowels' guilt or innocence. As alluded to above, two police officers, armed with a search warrant, arrested Nowels at his home and announced their intention to search the premises. In response thereto Nowels indicated that his basement room might be a good place to start. Following Nowels' suggestion, the officers found therein some 123 photographs, primarily of nude young girls, and a notebook containing lewd drawings and poems. Upon trial these photographs and the notebook were offered and received into evidence over objection. The basic objection to the photographs was that they "were not properly authenticated" inasmuch as there was no evidence that "these photographs accurately portrayed the actual scenes which they purported to show." The objection to the introduction of the loose leaf notebook was about the same, namely "not properly authenticated."

Upon trial the three girls testified in detail as to the indecent liberties perpetrated upon them by Nowels in the basement room in his home. They also testified that Nowels took many pictures of them in the nude in

various poses with his polaroid camera. The photographs above referred to were primarily of Lois, Eloise and Jean, as well as one or two other girls who on occasion were also present in the Nowels' basement room. Even a casual perusal of the notebook in question reveals that the drawings and poems contained therein referred to Nowels' three victims and were the handiwork of Nowels himself. The pictures and the notebook were at the very least a part, and an integral part, of the facts and circumstances surrounding the crime with which Nowels was charged and also tended to corroborate, and strongly so, the testimony of the girls as to the indecent liberties taken with their person by Nowels. The admission into evidence of these particular exhibits was well within the scope of our holding in *Wesner v. People,* 126 Colo. 400, 250 P.2d 124.

## IV.

■ Finally, error is also assigned to the refusal of the trial court to require the People to elect "with respect to each count of the amended information as to the particular acts which the People intended to rely upon for a conviction."

Upon trial of the guilt or innocence of Nowels, Lois and Eloise testified that Nowels took indecent liberties with them on May 12, 1965. Each testified that they had known Nowels for several years and that Nowels had also taken indecent liberties with them on many prior occasions. However, neither testified that Nowels had taken indecent liberties with them on any *particular* prior occasion, and their testimony tended to establish only one *particular* transaction, namely that of May 12, 1965, which was the "last" transaction and the one charged in the information.

Similarly, Jean testified that Nowels took indecent liberties with her on May 15, 1965. She too had known Nowels for at least a year, or possibly two, and stated that Nowels had also taken indecent liberties with her on many prior visits by her to his home. However, she

offered no testimony as to any *particular* prior transaction, and the one specific transaction testified to by this witness was that of May 15, 1965, which was the transaction which formed the basis for the third count in the information.

Counsel argues that simply because each of the girls testified that Nowels had perpetrated indecent liberties upon their persons on occasions prior to the ones with which he was charged, that in such circumstance the district attorney was required to elect. In this regard reliance is placed upon *Shier v. People,* 116 Colo. 353, 181 P.2 366; *Wills v. People,* 100 Colo. 127, 66 P.2d 329; *Schreiner v. People,* 95 Colo. 392, 36 P.2d 764, and *Laycock v. People,* 66 Colo. 441, 182 P. 880.

Under the authorities cited above, the district attorney was required to elect because his evidence showed that the defendant had committed the particular crime with which he was charged on more than one particular occasion. For example, in the *Schreiner* case the People's evidence showed that the defendant had sexual intercourse with an unmarried female under eighteen years on "four different days, namely on June 4, 8 and 11 and July 23, 1923." It was in this factual setting that the district attorney was required to elect. In the instant case, however, there was no evidence showing that Nowels committed the crime with which he was charged on any particular occasion, other than the occurrence which formed the basis for the crime charged. For example, Lois testified that Nowels committed indecent liberties on her person on May 12, 1965. She testified this was the "last" time, and that Nowels had done the same thing on many prior occasions. However, as concerns these earlier assaults she gave no dates or did she in any other manner identify, or testify about, any particular occurrence. In this circumstance no election is required because the evidence only tends to show one particular transaction, which in each instance was the transaction charged in the information. Our exami-

nation of the record fails to disclose that the jury could have somehow convicted Nowels for some act other than the very ones with which he was charged.

██ As noted above, Nowels received a "one day to life" sentence to the state penitentiary under C.R.S. 1963, 39-19-1 to 10. Since the time when Nowels was thus sentenced, the United States Supreme Court has declared the statute above cited to be unconstitutional. *Specht v. Patterson*, 386 U.S. 605, 87 S. Ct. 1209, 18 L.Ed. 2d 326. In 1968 the General Assembly attempted to meet the defects perceived by the United States Supreme Court by further legislation on the subject. Although counsel has not here argued the matter it would appear that Nowels has been sentenced under a statute since declared unconstitutional and that a 35(b) motion to vacate the sentence and impose a proper one may be in order. Nothing contained in this opinion is to be construed as precluding the trial court from entertaining such motion.

The judgment is affirmed.

Mr. Chief Justice Moore, Mr. Justice Day and Mr. Justice Kelley concur.