## No. 27435

## The People of the State of Colorado v. Anthony Charles Mulligan

(568 P.2d 449)

Decided August 29, 1977.                    Rehearing denied September 19, 1977.

510

J. D. MacFarlane, Attorney General, Edward G. Donovan, Solicitor General, Dale Tooley, District Attorney, Thomas P. Casey, Chief Complaint Deputy, Richard T. Spriggs, Chief Deputy, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellee.

Holme, Roberts & Owen, John L. Kane, Jr., John R. Webb, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Appellant, Anthony Charles Mulligan, appeals from his conviction on two counts of second-degree arson (1971 Perm. Supp., C.R.S. 1963, 40-4-103)[1] and one count of conspiracy to commit second-degree arson (1971 Perm. Supp., C.R.S. 1963, 40-2-201).[2] We affirm in part and reverse in part.

The charges arose out of a series of condominium fires which occurred between April 1968 and June 1972 in the Denver metropolitan area. The state grand jury returned an indictment against appellant and codefendant William F. Swanson, who later testified for the People at appellant's trial under a grant of immunity. The indictment charges the defendants with responsibility for the February 5, 1972, fire at Hampden Place Apartments and the July 24, 1972, fire at Springwater Apartments. Appellant pleaded not guilty to all counts.

Appellant's trial was set for October 22, 1975. On October 17, 1975, appellant sought a continuance on the grounds of prejudicial publicity concerning a fire on October 10. The same day, he moved to compel disclosure of the People's confidential informer. Initially, the district court denied the motion for continuance but granted disclosure of the informer. Three days later, the court reversed itself and denied the disclosure motion as well.

Appellant again sought a continuance on October 23, 1975, the eve of trial. The motion was based on a radio broadcast in which the district attorney and one of his deputies suggested a connection between the condominium fires and organized crime. The court denied the motion but ruled that any juror hearing the program could be challenged for cause. The trial was reset for October 24, 1975.

The People's case consisted in large part of the testimony of developers and building contractors who had suffered fires on their projects, prosecution for which was barred by the statute of limitations. Generally, they testified to being contacted by appellant, who was field representative for the Northern Colorado Building and Construction Trades Council, regarding the use of union construction workers. Appellant attempted to persuade them to hire union workers and attempted to persuade workers already hired to join the union. According to one witness, appellant stated

---

[1] Now section 18-4-103, C.R.S. 1973.
[2] Now section 18-2-201, C.R.S. 1973.

that "problems had been known to arise over people that had an open shop." Another witness testified that appellant had remarked that construction projects with no union contractors "had been known to burn." At other projects, appellant allegedly said in parting that they would be back or that the contractor would be hearing from them.

Some time after appellant's visit, the project would suffer a fire later described by an expert witness as being of incendiary origin, *i.e.*, a "set" fire. In instances, appellant revisited the project after the fire. At one project, he specifically denied responsibility for the fire. Encountering further resistance to his efforts on behalf of the union at another site, he said, "I thought we had taught you a lesson before."

The People next presented Paul R. Welch, an official of the local lathers' union and delegate to the Northern Colorado Building and Construction Trades Council. Welch related a conversation with appellant shortly before the April 12, 1968, apartment fire at 1075 Washington Street, Denver. He testified that appellant expressed concern about his success as a union organizer and felt the need for stronger organizing methods. According to Welch, appellant made similar statements after the April 12, 1968, fire. None of Welch's testimony at trial directly implicated appellant in these fires.

Welch's testimony, however, did implicate appellant in the February 27, 1970, fire at 921 Kennedy Drive in Northglenn. He testified that after work on that date he accompanied appellant to a bar in Thornton. They discussed union affairs, organizing problems in particular. Again, appellant stated a need for stronger organizing methods. From there they went to another bar, continuing their discussion and becoming, according to Welch, "very drunk." They then returned to appellant's car. Appellant transferred two parcels from his car to Welch's car. At appellant's direction, they drove north to a residential area, where they stopped. Appellant left the car, taking the two parcels. He told Welch to drive around the block. When Welch returned, he saw appellant running down the sidewalk. At appellant's direction, he drove around the corner and stopped, where he waited for appellant, who then got in the car, and they left the scene.

Welch described himself as "in some state of emotional uproar." Appellant said, "What's wrong with you?" and "You are acting brand new." Attempting to reassure Welch, appellant said "Shape up" and something about "This is nothing new," or words to that effect.

Fortunately, a passing motorist saw the fire. He stopped and was able to remove a container which had a flammable liquid burning against the open studding of the building under construction. Firemen responded and the fire was quickly extinguished.

Next, Welch described union business agent meetings, attended by appellant and him. He testified that the subject of the fires arose

indirectly. At a meeting in early 1971, a heated discussion of stronger organizing methods took place. One person stated that if the council was responsible, it should stop "[b]efore a fireman gets killed."

During cross-examination of Welch, defense counsel renewed his motion for disclosure of the People's confidential informer. The basis of this motion was a Colorado Bureau of Investigation report relating that Welch had discussed with the informer a fire that occurred on April 12, 1968. According to the report, appellant asked Welch to assist him in setting this fire. The report stated that appellant admitted responsibility for the fire to Welch.

Defense counsel renewed his motion for disclosure of the informer's identity for the purpose of impeaching Welch on his testimony regarding conversations with appellant before and after the April 12, 1968, fire. Unlike his statements to the informer, contained in the CBI report, Welch's trial testimony did not directly implicate appellant in this fire. The court denied the motion.

William F. Swanson testified that he was a business agent for the local cement masons' union at the time of the fires charged in the indictment. He denied that he and appellant had ever agreed to set condominium fires to induce contractors to sign union shop agreements. Swanson acknowledged making statements inconsistent with these denials to a CBI agent in 1974. After giving Swanson the opportunity to explain the inconsistent statements, the district attorney introduced tape recordings of these statements through a CBI agent. On the tapes, Swanson claimed that appellant was responsible for $10 million of damage to nonunion construction projects. The People then rested.

The defense case opened with Robert G. Good, an expert in labor law. Through this witness, appellant attempted to explain union tactics used in negotiating with management and to place appellant's allegedly threatening statements in context, showing that such threats were both common and not related to criminal activity. The court sustained the district attorney's objection to the witness' testifying to the law or to any inferences to be drawn from appellant's statement.

Appellant called witnesses to rebut the People's evidence of common scheme, plan or design. Several builders described generally cordial relations with appellant. Two builders testified to fires on their projects, although neither had experienced union problems or had any contact with appellant.

Regarding the February 5, 1972, fire, appellant attempted to establish that the project was underfinanced, irregularities appeared in the ledgers, and materials supposedly destroyed by the fire turned up elsewhere. This evidence was offered to show that others had a motive to set the fire. The court excluded this testimony.

Three witnesses then described men they had seen at the sites of three fires included in the People's case. The witnesses described the men they saw alternately as being about eighteen, in their thirties, and two black males.

Finally, appellant's wife and daughter provided appellant with alibis for the dates of four fires, including the February 5 and July 24, 1972, fires charged in counts I and II of the indictment. Appellant then rested.

The jury returned verdicts of guilty on both counts of second-degree arson and on conspiracy to commit second-degree arson. Appellant received consecutive five-year terms on the arson convictions and a concurrent five-year sentence for conspiracy.

Before discussing the particular assignments of error for reversal, we note that the record contains competent evidence to support the conviction of appellant on count I of the indictment, arson of the Hampden Place Apartments which occurred on February 5, 1972. Likewise, the record contains ample competent evidence to support count III, that of conspiracy to commit arson.

Concerning count II, the charge of arson of the Springwater Apartments at 3131 West Mexico, we find a dearth of evidence that appellant committed this offense. The general contractor testified that he had never been contacted by appellant and that his union problems had been settled without threat or violence before the fire occurred. A verdict of guilt must be based on more than surmise or speculation. This conviction, therefore, cannot stand.

Appellant contends the district court erred in the following rulings: (1) refusal to compel disclosure of the confidential informer's identity; (2) denial of continuance because of pretrial publicity; (3) permitting the People to call William F. Swanson solely to impeach him; (4) failure to declare section 16-10-201, C.R.S. 1973, unconstitutional; (5) certain evidentiary rulings; and (6) rejection of appellant's tendered instructions.

## I.

Appellant argues that the district court committed reversible error in denying his motion to disclose the identity of the People's confidential informer. Appellant sought the testimony of the informer to show that Paul R. Welch, whose testimony most closely connected appellant with an act of arson, had made statements to the informer inconsistent with his trial testimony. We find no reversible error.

The United States Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, set out the following standard for disclosure of an informant's identity:

"* * * Where the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [against disclosure] must give way."

As we noted in *People v. Marquez*, 190 Colo. 255, 546 P.2d 482, the decision to disclose an informer's identity requires a balancing of the public's interest in the free flow of information to the police by protecting the anonymity of the informer against the accused's right to prepare a defense.

Regarding the public's interest in encouraging informers to come forth with information of wrongdoing, the record shows that the informer felt considerable anxiety for his own safety and the safety of his family, should his identity be revealed. Agent Carl Whiteside of the Colorado Bureau of Investigation gave the following testimony at a hearing on appellant's motion to disclose on October 17, 1975:

"Q. Did the informant express to you any concern or anxiety for his own safety?

\* \* \* \*

"A. Not only for the safety of the informant, but also for the safety of a member of the informant's immediate family, who was a semi-invalid. It was the informant's feeling that if the informant's identity were known, that either the informant personally or a member or members of the informant's immediate family could be subjected to physical retaliation and/or their property could be subjected to burning of the same nature that the condominiums had suffered.

"Q. Did the informant ever express to you any desire that his identity be concealed?

"A. When I spoke to the informant, the informant, to use a proper word, begged me never to disclose the identity of the information."

In comparison, appellant's interest in learning the informer's identity appears slight. The informer was not a witness to nor was he involved in any criminal activity of appellant. His testimony was desired solely to impeach one of the People's witnesses, Paul R. Welch. Appellant sought to introduce Welch's prior statement that appellant had asked him to aid in setting a fire on April 12, 1968, a conversation which Welch denied at trial. Interestingly, the impeaching testimony was far more inculpatory to appellant than the testimony he sought to impeach. In view of this fact and the fact that Welch's credibility was attacked by other evidence, we cannot say that the trial judge erred in concluding that the public's and informer's interest in preserving his anonymity outweighed appellant's interest in disclosure, and that disclosure was not "relevant and helpful to the defense \* \* \* or \* \* \* essential to a fair determination of [the] cause." *Roviaro v. United States, supra*. Thus, we find no prejudicial error in the denial of appellant's motion to disclose the informer's identity.

## II.

Appellant contends that the publicity surrounding the condominium fires, and particularly a radio interview of the district attorney and one of his deputies, created an atmosphere of prejudice which denied him a fair

trial. Appellant assigns as error the court's denial of his motion for a continuance to let the effects of this publicity subside.

In general, the grant or denial of a continuance lies within the trial court's discretion. *People v. Holcomb*, 187 Colo. 371, 532 P.2d 45. We will not reverse the trial court's ruling "unless the defendant can demonstrate that' the publicity had an actual adverse effect upon the jury panel or portion thereof" or shows "'massive, pervasive and prejudicial publicity' where a denial of a fair trial could have been 'presumed.'" *People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (denial of change of venue); *Sergent v. People*, 177 Colo. 354, 497 P.2d 983 (denial of change of venue).

Here, appellant has demonstrated neither actual adverse effect upon the jury nor massive, pervasive and prejudicial publicity. In view of the fact that the transcript of voir dire was not certified as part of the record, we have no evidence that the alleged prejudice appeared during voir dire. *See People v. Medina*, 185 Colo. 183, 522 P.2d 1233; *Nowels v. People*, 166 Colo. 140, 442 P.2d 410. In this regard, we also note the district court's ruling that any juror who heard the radio broadcast could be challenged for cause. Likewise, the record does not reflect the "massive, pervasive and prejudicial" pretrial publicity found in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600. *See Sergent v. People, supra.*

Although we find no reversible error in the court's denial of appellant's continuance motion, we certainly do not condone the participation of the district attorney and his deputy in an ill-timed radio interview. *See ABA Standards Relating to Fair Trial and Free Press*, § 1.1; *ABA Standards Relating to The Prosecution Function*, § 1.3; Canon 7, DR 7-107, Code of Professional Responsibility.

## III.

Next, we consider appellant's contention that the district attorney should not have been permitted to call William F. Swanson solely to impeach him by introduction of taped, prior inconsistent statements. He contends that Swanson offered no relevant testimony.

At the outset, we do not agree that Swanson gave no relevant testimony. He testified that he had never agreed to help appellant commit arson and had never contributed funds to finance such crimes. Obviously, this testimony was relevant, albeit exculpatory.

Having elicited this testimony, the district attorney was authorized by section 16-10-201, C.R.S. 1973, to introduce Swanson's prior inconsistent statements. Section 16-10-201 provides:

"(1) Where a witness in a criminal trial has made a previous statement inconsistent with his testimony at the trial, the previous inconsistent statement may be shown by any otherwise competent evidence and is admissible not only for the purpose of impeaching the testimony of the

witness, but also for the purpose of establishing a fact to which his testimony and the inconsistent statement relate, if:

"(a) The witness, while testifying, was given an opportunity to explain or deny the statement, or the witness is still available to give further testimony in the trial; and

"(b) The previous inconsistent statement purports to relate to a matter within the witness's own knowledge."

The record is clear that the district attorney satisfied the statutory requirements for admission of Swanson's taped, prior inconsistent statements. Neither surprise nor hostility is required to impeach one's own witness. *People v. Bastardo*, 191 Colo. 521, 554 P.2d 297; *People v. Hawthorne*, 190 Colo. 437, 548 P.2d 124. Consequently, the tape recordings were properly admitted.

## IV.

Alternatively, appellant maintains that section 16-10-201 is an unconstitutional encroachment by the legislature upon the exclusive power of the judiciary to prescribe court procedures, in violation of *Colo. Const.* Art. VI, Sec. 2.

We answered a similar contention in the negative in *People v. Smith*, 182 Colo. 228, 512 P.2d 269. We hold section 16-10-201, C.R.S. 1973, to be constitutional. *See also Music City v. Est. of Duncan*, 185 Colo. 245, 523 P.2d 983, and *Estate of Freeman v. Young, Jr.*, 172 Colo. 322, 473 P.2d 704.

## V.

Appellant challenges two evidentiary rulings of the district court: exclusion of expert testimony by Robert G. Good on union tactics and the meaning of certain statements attributed to appellant, and exclusion of testimony showing that others had a motive to set the February 5, 1972, fire.

The admission or exclusion of expert testimony lies with the trial court's discretion and will be upheld unless clearly or palpably erroneous. *Freeman v. Gentry Builders*, 185 Colo. 123, 522 P.2d 739; *Bridges v. Lintz*, 140 Colo. 582, 346 P.2d 571; *Pueblo v. Ratliff*, 137 Colo. 468, 327 P.2d 270. Expert testimony is admissible "only when the subject matter is such that a jury cannot be expected to draw correct inferences from the facts." *McNelley v. Smith*, 149 Colo. 177, 368 P.2d 555. *Accord, United Telecommunications, Inc. v. American Television and Communications Corp.*, 536 F.2d 1310 (10th Cir. 1976); *Ball v. Smith*, 87 Wash.2d 717, 556 P.2d 936.

We do not find the court's ruling clearly erroneous. Although made in the context of labor-management dealings, the statements attributed to appellant concerning problems with nonunion projects and his intention to return to certain projects contained no technical terms. Expert testimony is not admissible to explain nontechnical or nonscientific terms,

simply because their meanings and the inferences to be drawn from them are within the competence of the trier of fact. *Murphy v. Walsh*, 158 Cal. App.2d 675, 323 P.2d 206; *Vibra Brush Corp. v. Schaffer*, 152 F. Supp. 461 (S.D.N.Y. 1957); *rev'd on other grounds*, 256 F.2d 681 (2d Cir. 1958); *Wisconsin Alumni Research Foundation v. George A. Breon & Co.*, 85 F.2d 166 (8th Cir. 1936), *cert. denied*, 299 U.S. 598, 57 S.Ct. 191, 81 L.Ed. 441.

Turning to the second evidentiary ruling complained of — exclusion of evidence that other parties had a motive to set one of the fires charged to appellant — the applicable rule of law was stated by the Supreme Court of Missouri in *State v. Umfrees*, 433 S.W.2d 284 (Mo. 1968) and reaffirmed in *State v. Kelly*, 539 S.W.2d 106 (1976):

"Evidence that another person had an opportunity or motive for committing the crime for which the defendant is being tried is not admissible without proof that such other person committed some act directly connecting him with the crime."

*Accord, State v. Renteria*, 21 Ariz. App. 403, 520 P.2d 316; *People v. Hayden*, 30 Cal. App.3d 446, 106 Cal. Rptr. 348.

Here, appellant failed to identify any other person or show that such person committed any act linking him with the crimes charged. As a result, the court properly excluded the proffered testimony.

## VI.

Finally, appellant cites as error the rejection of three tendered instructions. Two of these instructions, concerning evidence of appellant's good character and credibility of law enforcement officials, were covered by other instructions and thus properly refused. *People v. Medina*, 185 Colo. 183, 522 P.2d 1233; *People v. Mackey*, 185 Colo. 24, 521 P.2d 910. The third instruction, on abandonment of the conspiracy, lacks support in the evidence. In fact, appellant endeavored to prove throughout trial that he never entered into a conspiracy in the first place. The court correctly rejected this instruction for lack of evidentiary support. *People v. Truesdale*, 190 Colo. 286, 546 P.2d 494; *People v. Lundy*, 188 Colo. 194, 533 P.2d 920.

The judgment of conviction of arson in the second degree, as charged in count II of the indictment, is reversed, with directions that this charge be dismissed.

The judgments of conviction of arson in the second degree and of conspiracy to commit arson, as charged in counts I and III of the indictment, are affirmed.

MR. JUSTICE ERICKSON dissents.

MR. JUSTICE GROVES and MR. JUSTICE CARRIGAN do not participate.