**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**Joe Kenneth WHITE,**
**Defendant-Appellant.**

**No. 78–158.**

Colorado Court of Appeals,
Div. I.

March 26, 1981.

Rehearing Denied April 23, 1981.

Certiorari Denied Aug. 10, 1981.

610

J. D. MacFarlane, Atty. Gen., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., City and County of Denver, Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Norman R. Mueller, Deputy State Public Defender, Denver, for defendant-appellant.

KIRSHBAUM, Judge.

Defendant, Joe Kenneth White, appeals his conviction by jury of first degree murder. We affirm.

The record reveals that on the evening of April 6, 1977, Dean McLaughlin was shot and killed in front of the Union Pacific Building in Denver. Defendant and McLaughlin were both employed by Union Pacific and McLaughlin was defendant's immediate supervisor.

Following the shooting, several shotgun shell casings were found at the scene. Later that same evening, a police officer interviewed several other Union Pacific agents and learned that defendant had purchased an Ithaca 12-gauge shotgun two weeks prior to the shooting, that he had stated displeasure with McLaughlin over the amount of a recent pay raise, and that defendant sought information about McLaughlin's whereabouts the day prior to the shooting. A police ballistics expert determined that the shells found at the scene could have been fired by an Ithaca 12-gauge shotgun.

This and other information was incorporated into an affidavit in support of an application for an arrest warrant for defendant and a search warrant for his home, both of which were issued on April 7, 1977. Defendant was taken into custody by the police on April 7th at Dahlia Shopping Center and transported to his house, which was then searched. During the search of defendant's house, the police discovered an Ithaca shotgun in a closet and several expended shotgun shells in a garbage can in the kitchen. Defendant was subsequently charged with first degree murder.

At trial, an expert witness for the prosecution testified that some of the shotgun shells recovered at the scene were fired by the same gun which fired the shells found in defendant's garbage can. The expert also testified that he test-fired defendant's gun and that the markings on the shells expended during the test matched those found on some of the shells at the scene and the shells found in defendant's garbage can. Defendant was convicted of first degree murder.

## I. THE AFFIDAVIT

Defendant argues that the trial court erroneously denied his motion to suppress statements made by him to arresting officers and to suppress evidence seized from his house and yard. He asserts that the affidavit in support of the search and arrest warrants does not establish probable cause. We disagree.

Defendant first claims that the affidavit was insufficient because it contained inaccurate information. The affiant, Officer Haney, interviewed three of defendant's coworkers immediately following the murder. In the affidavit, Haney stated that one of those agents indicated that defendant had challenged McLaughlin's authority over him. At the suppression hearing, all three of the agents denied having made the state-

ment. The trial court concluded that one of them did make the statement but that Haney had misidentified that agent in the affidavit.

▌ Statements in an affidavit which are untrue or which were known to the affiant to be false must be stricken and cannot be considered in determining whether probable cause exists to support the issuance of a warrant. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *People v. Hampton*, 196 Colo. 466, 587 P.2d 275 (1978). After hearing the testimony of witnesses, including the defendant, the trial court concluded that Haney had acted in good faith in executing the affidavit; that although some of his statements may have been conclusory, they accurately reflected the information obtained at the meeting with the three agents; and, that any inaccurate attribution of information contained in the affidavit was an error of identification which did not invalidate the accuracy of the information itself. There is substantial evidence in the record to support the trial court's conclusions; hence, we may not disturb its findings on appeal. *See People v. Ellis*, 189 Colo. 242, 539 P.2d 132 (1975).

Defendant further argues that, even with the disputed information, the affidavit falls short of establishing probable cause. We disagree.

▌ Facts set forth in an affidavit must support the belief of a reasonably prudent person that the property to be seized is located at the place to be searched or, in the case of an arrest warrant, that an offense has been committed by the person named in the warrant. *See Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *People v. Brethauer*, 174 Colo. 29, 482 P.2d 369 (1971).

▌ The affidavit reveals that two weeks before the killing defendant had purchased an Ithaca 12-gauge shotgun, 00-gauge Remington-made buckshot, and Remington shells; that 00-gauge Remington buckshot and Remington shells were found at the scene; that the Remington shells could have been fired by an Ithaca shotgun; that defendant was dissatisfied with a recent pay raise recommended by the victim; that defendant had made a statement revealing hostility toward the victim just prior to the shooting; that the day prior to the incident, the defendant had requested information about the victim's whereabouts; and that defendant had rented an automobile in Colorado Springs for a 24-hour period on the day prior to the incident. We conclude that the affidavit included sufficient facts to warrant the conclusion by an issuing judge that there was probable cause to believe defendant fired the shots that killed McLaughlin.

## II. ADMISSIBILITY OF DEFENDANT'S STATEMENTS

▌ Defendant contends that the trial court erred in admitting into evidence certain statements defendant made while being taken into custody and during the drive to his house. We disagree.

Testimony was admitted that, while police officers sought to subdue and arrest defendant, he stated that they would never take him alive and that they would have to kill him. Testimony was also admitted that during the drive to defendant's house, prior to the giving of any *Miranda* warnings, defendant volunteered the information that the shotgun was in his closet.

The trial court found on conflicting evidence that these statements were spontaneous and voluntary utterances by defendant, that they were not given in response to any interrogation or comments by police officers, and that, therefore, defendant's constitutional rights had not been violated. The record supports the trial court's ruling on this question and it will not be disturbed on appeal. *See People v. Pineda*, 182 Colo. 385, 513 P.2d 452 (1973). Furthermore, defendant did not deny ownership of an Ithaca shotgun at the time the offense occurred; hence, the admission of his statement concerning the location of the shotgun was not prejudicial.

## III. EXCLUSION OF EVIDENCE

█ Defendant argues that the trial court erred in excluding testimony from two witnesses, Mr. Loggins and Mr. Seward, proffered by the defendant. We disagree.

After hearing *in camera* testimony from both witnesses, the trial court ruled that their testimony was inadmissible, relying on *People v. Mulligan*, 193 Colo. 509, 568 P.2d 449 (1977). In *Mulligan*, the trial court excluded evidence that other persons had a motive to commit the crime of which defendant was charged where there was no evidence linking the other persons to the crime charged.

Loggins and Seward would have testified that some two and one half hours before the killing they saw an unidentified man with a shotgun walking on the street a few blocks from where McLaughlin was shot. This evidence, while relevant to some degree concerning defendant's theory that other persons committed the murder, had no direct connection with the crime of which defendant was charged. In these circumstances, the trial court did not abuse its discretion in excluding this testimony. *See People v. Schultheis*, Colo.App., 618 P.2d 710 (1980) (*cert. granted* Oct. 27, 1980); *People v. Marioneaux*, Colo.App., 618 P.2d 678 (1980).

## IV. JURY INSTRUCTIONS AND CHARACTER EVIDENCE

█ Defendant contends that the trial court erroneously instructed the jury regarding evidence of character. We disagree.

Evidence concerning defendant's character and his reputation for truth and veracity was presented by defendant. The trial court refused defendant's requested instruction on good character, but gave the following instruction to the jury:

"You have heard evidence in this case that the defendant has a good moral character and a good reputation for truth and veracity. This evidence may be used by you in conjunction with all the evidence presented in *reaching your decision* and such evidence is competent as evidence tending to generate a reasonable doubt of the guilt of the defendant as to the offense charged. It is entirely within the province of the jury to determine what weight shall be given this evidence. If on all the evidence you believe in the guilt of the defendant beyond a reasonable doubt, he may not be acquitted solely upon the ground of such good moral character or good reputation for truth and veracity."

Defendant argues that the last sentence of this instruction misstates the law on the weight to be accorded evidence of good character announced by the United States Supreme Court in *Edgington v. United States*, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 (1896).

Some jurisdictions have adopted the position urged by defendant. *See United States v. Leigh*, 513 F.2d 784 (5th Cir. 1975); *State v. Allen*, 89 Wash.2d 651, 574 P.2d 1182 (1978). However, in *Wilder v. People*, 86 Colo. 35, 278 P. 594 (1929), the Colorado Supreme Court approved an instruction containing language similar to the instruction at issue here, and other jurisdictions have approved similar instructions. *See State v. Demmings*, 310 Minn. 152, 246 N.W.2d 31 (1976); *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976); *People v. Miller*, 35 N.Y.2d 65, 315 N.E.2d 785, 358 N.Y.S.2d 733 (1974). We conclude that *Wilder* is controlling here, and that the giving of the instruction did not constitute reversible error.

Defendant also argues that the trial court erred in allowing the prosecution to elicit testimony concerning defendant's character during the prosecution's case-in-chief. The People argue that the evidence in question does not constitute character evidence. Defendant did not object to the prosecution's initial question of defendant's co-worker respecting defendant's manifestation of a temper at work. Moreover, even if the testimony is deemed character evidence, any error resulting from its admission was harmless beyond a reasonable doubt in view

of the fact that the defense subsequently offered extensive evidence on the issue of defendant's character and in view of the additional evidence in the case respecting defendant's guilt. *See People v. Lee*, Colo., 607 P.2d 998 (1980).

Defendant also asserts that the trial court erroneously instructed the jury regarding defendant's theory of the case.

■■ Defendant tendered three instructions encompassing his theory that the evidence found at the scene was planted by third parties. Although all three were rejected, the trial court did instruct the jury as to the defense of "alibi." A defendant is entitled to an instruction on his theory of the case, *People v. Moya*, 182 Colo. 290, 512 P.2d 1155 (1973). However, no particular form of instruction is required when the instructions as a whole adequately cover defendant's theory. *People v. Villafranca*, 38 Colo.App. 369, 559 P.2d 1116 (1976), *aff'd in part and rev'd in part sub nom. Villafranca v. People*, 194 Colo. 472, 573 P.2d 540 (1978). There was no support in the evidence for defendant's theory that shell casings from defendant's gun were placed at the scene by third parties; therefore, the trial court did not err in refusing defendant's tendered instructions on this. *See People v. Griego*, 183 Colo. 419, 517 P.2d 460 (1973).

## V. VOIR DIRE

■ Defendant asserts that the trial court erred regarding *voir dire* of the jury on the issue of racial bias. He first contends that the trial court unduly restricted defense counsel's *voir dire* of prospective jurors respecting their possible racial prejudices, thus denying him the right to a fair and impartial jury. We disagree.

The trial court prohibited defense counsel from asking jurors the extent of their personal relationships with blacks, such as whether they had blacks at their house for lunch or dinner. However, it permitted defense counsel to ask each prospective juror individually whether the juror worked with blacks or was prejudiced against blacks. We find that this restriction of *voir dire*

was within the sound discretion of the trial court, that it permitted defendant to elicit sufficient information to ascertain potential racial prejudice, and that defendant was in no way prejudiced thereby. *See People v. Brake*, 191 Colo. 390, 553 P.2d 763 (1976).

Defendant also contends that the trial court erred in sustaining the prosecution's challenge for cause as to one juror. Our examination of the record reveals that the trial court conducted an extensive examination of the juror and that the juror's response to questions propounded indicated that she was not impartial. We conclude that the trial court did not abuse its discretion in concluding that the juror should be excused for cause.

Judgment affirmed.

KELLY, J., concurs.

BERMAN, J., dissents.

BERMAN, Judge, dissenting.

Respectfully, I dissent.

The majority holds that the jury in this case was not improperly instructed as to the use to which evidence of good character may be put. I cannot agree.

In the first place, the given character evidence instruction does not conform to *Colo. J.I.—Crim.* 4:14; consequently, it disserves the purpose for which our "uniform" instructions have been promulgated. In that regard, the Reporter of the Supreme Court's Committee on Uniform Criminal Jury Instructions stated in the general directions for use of *Colo. J.I.—Crim.*:

"The major effort of this project has been to present uniformity; uniformity of instructions in criminal cases where now much disparity exists depending upon counsel, the judge, and the court location for the correctness and completeness of instructions."

What is of greater concern to me, though, is the likelihood that the instruction given in this case caused the jury to mis-weigh evidence of defendant's good character. The last sentence of the instruction reads as follows:

"If on all the evidence you believe in the guilt of the defendant beyond a reasonable doubt, he may not be acquitted solely upon the ground of . . . good moral character or good reputation for truth and veracity."

Such language could well have induced the jurors to disregard the instruction as a whole until they had reviewed the entire case. If upon such review the jury thought the defendant guilty, the further effect of the sentence in question could have been to induce the jury to give character evidence no consideration whatever. Such a consequence would, at the very least, have resulted in the jury's disregarding that portion of the charge which states:

"No single one of these instructions states all the law applicable to the case, but all of these instructions must be taken, read and considered together, *as they are connected with and related to each other as a whole.*" (emphasis added)

Hence, on the one hand, the jurors were instructed to consider *all* instructions together. On the other hand, they were, in effect, instructed to ignore the character evidence instruction unless, on all the evidence, they did *not* believe in the defendant's guilt beyond a reasonable doubt. Thus, the instructions given are *mutually* inconsistent.

Equally unfortunate, however, is the *internal* inconsistency of the character evidence instruction itself. In that instruction, the jury was told that character evidence

"may be used by you in conjunction with all the evidence presented in reaching your decision and *such evidence is competent as evidence tending to generate a reasonable doubt of guilt of the defendant as to the offense charged [, and that i]t is entirely within the province of the jury to determine what weight shall be given this evidence.*" (emphasis added)

In contrast, the selfsame instruction's previously quoted last sentence suggests that character evidence may *not* be used unless the jury *already entertains doubt* as to defendant's guilt.

Given such mutual and internal inconsistency of instructions, the potential to confuse and mislead the jury cannot be disputed.

Finally, the nature of these instructions is such as to create a hierarchy among them, that is, there are now major instructions which cannot be disregarded, and minor ones which the jury may disregard. This is hardly a situation conducive to uniformity.

We have previously had occasion to remind the trial courts that the pattern jury instructions should be given, and have reversed where they were not. *People v. Zuniga,* Colo.App., 631 P.2d 1157 (1981); *People v. Sandoval,* 42 Colo.App. 503, 596 P.2d 1225 (1979). A misstatement of the law in an instruction is more likely to be prejudicial than an omission or an incomplete instruction. *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). Such was the view of Judge Learned Hand, who stated in *Nash v. United States,* 54 F.2d 1006 (2d Cir. 1932), that "evidence of good character is to be used like any other, once it gets before the jury, and the less they are told about the grounds for its admission, or what they shall do with it, the more likely they are to use it sensibly."

In my view, *Edgington v. United States,* 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 (1896), accurately states the law, and *Colo. J.I.—Crim.* 4:14 more closely follows the law announced there than does the instruction given in the instant case. The federal courts, amongst others, follow *Edgington,* and so should we.

I would reverse the judgment and remand for a new trial.