Edward George KOGAN, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 85SC489.

Supreme Court of Colorado,
En Banc.

May 9, 1988.

Rehearing Denied June 6, 1988.

Theodore A. Borrillo, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for respondent.

ROVIRA, Justice.

The petitioner-defendant, Edward G. Kogan, appeals his conviction of four counts of sexual assault on a child. He contends that the evidence offered at trial was insufficient to support a finding that he was guilty of the charges beyond a reasonable doubt; that he was insufficiently apprised of the charges against him so as to be adequately prepared in his defense and be protected against double jeopardy; that the trial court should have ordered the prosecution to select a specific act upon which to rely for conviction; and finally, that the trial court improperly limited his cross-examination of a key prosecution witness. We cannot enter a judgment of acquittal, as the evidence introduced at trial, viewed in a light most favorable to the prosecution, is sufficient to find the defendant guilty of the charges beyond a reasonable doubt. Nevertheless, our concerns with the cumulative effect of the errors commit-

ted by the trial court cause us to reverse the judgment and remand for a new trial.

## I.

When the charges were brought, the defendant had been a school teacher in the Sheridan School District, Arapahoe County, Colorado, for approximately twelve years. The acts of sexual assault were alleged to have occurred while the defendant was a fourth grade teacher at Ora Oliver Elementary School during the 1981–82 and 1982–83 school years. The defendant had never been suspended from teaching, nor had he ever been accused or convicted of any crimes.

An information was filed in February 1983, charging the defendant with five counts of sexual assault on a child in violation of section 18–3–405, 8B C.R.S. (1986), and four counts of child abuse in violation of section 18–6–401, 8B C.R.S. (1986). The alleged victims were V.A., C.M., J.W., and E.L. The initial information charged that two counts of sexual assault were perpetrated upon C.M. In November 1983, the information was amended to include one count of sexual assault on a child and one count of child abuse, both acts allegedly perpetrated upon A.C.

Given the general nature of the information, the defendant moved for an order requiring the prosecution to provide him with a bill of particulars. The court granted the motion, but limited it to the "best of the [district attorney's] knowledge and belief." When the information was amended to include the additional counts, the defendant moved for an amended bill of particulars, requesting the same information sought for the original nine counts. The People complied with an amended bill of particulars with responses as "specific" as the first bill. The defendant's objections to the sufficiency of the bill of particulars form a basis for this appeal.

Count 1 of the information pertaining to V.A. was dismissed at the end of the preliminary hearing for lack of probable cause. The five counts of child abuse were dismissed on motion of the People at the beginning of trial. Of the remaining five counts, that relating to J.W. was dismissed when her parents—who had moved to another state—would not return her to Colorado to testify.

Trial commenced on November 14, 1983. The defendant waived his right to a jury trial and was, therefore, tried by the court. The People's case, as will be discussed below, essentially consisted of the testimony of the three alleged victims concerning improper touching by the defendant in his classroom. The defendant testified and denied all of the allegations. The court found him guilty of four counts of sexual assault on a child and, rejecting the recommendation of the probation department, sentenced him to three years imprisonment on each count, to run concurrently.

In an unpublished opinion, the court of appeals affirmed the conviction. It concluded that the evidence presented at trial was sufficient to support the finding of guilt; that the bill of particulars was adequate; that the trial court did not err in refusing to require the prosecution to elect a specific act as to each victim, and to rely on that act for conviction; and finally, that the defendant was not prejudiced by the trial court's limitation on the cross-examination of Dr. James Cullen.

We granted certiorari to consider the defendant's claims regarding: (1) the sufficiency of the evidence; (2) the bill of particulars, and requiring the prosecution to select a specific act and to rely upon that choice for conviction; and (3) the limitation on cross-examination.

## II.

### A.

The defendant contends that the evidence introduced at trial was insufficient to support the trial court's finding of guilt.

Under section 18–3–405, 8B C.R.S. (1986), sexual assault on a child is committed when "an actor ... knowingly subjects another not his or her spouse to any sexual contact ... if the victim is less than 15 years of age and the actor is at least four years older than the victim." We have construed the term "sexual contact" to mean "the

intentional touching of the victim's intimate parts by the actor ... for the purpose of sexual arousal, gratification, or abuse." *People v. West,* 724 P.2d 623, 628 (Colo. 1986).

Since the defendant's first claim concerns the sufficiency of the evidence tying him to the sexual assaults, the evidence as adduced upon trial will be discussed in some detail.

Evidence offered at trial indicates that K.M., a student in the defendant's 1982–83 fourth grade class, spoke to her mother on or about October 12, 1982, about alleged improper touching in the defendant's classroom. K.M.'s mother called the school principal, Dr. James Cullen, on October 15, 1982, and gave him the names of four girls that K.M. stated were talking among themselves regarding improper touching. Those names were V.A., C.M., C.D., and B.P. After receiving this call, Cullen went to the defendant's classroom and requested that the four named girls accompany him back to his office. Once there, he asked them if they wanted to talk to him about something.

C.M. was the first to talk. She told the principal that the defendant was "touching some of the girls and putting his hands up their blouses." Initially she referred to V.A. V.A. thereupon said that the defendant had recently tried to put his hand up her blouse, but she had taken his hand out and slapped him. The girls indicated that the improper touching was happening to all the girls in the classroom. At no time during this initial meeting with Cullen did any of the girls state that the defendant placed his hand in the pants of any of the four girls. C.M. never stated that the defendant placed a hand on her breast. The meeting lasted 15 to 20 minutes.

After this initial conversation, Cullen summoned the defendant into his office and suspended him with pay pending further investigation. At that time, Cullen did not tell the defendant the names of the students making the allegations or their specific nature.

Cullen had the four girls and their parents come to school on October 18 for further interviews, at which time he met with them in the presence of a police detective.

Following that meeting, Cullen arranged to have interviews conducted at the school by police officers and directed Juanita Oppergard, the school psychologist, to sit in on the interviews. The detectives interviewed students from the defendant's present (1982–83) fourth grade class (which numbered 25 to 28 students), and his previous (1981–82) fourth grade class (the present fifth grade class, which numbered approximately 30 students). The students' ages ranged from 9 to 11 years. These interviews took the better part of three days and were not tape recorded. Students were interviewed for a period of time ranging from one-half hour to a half a day, and then sent back into the classroom.

Cullen attended several of the interviews conducted by the police. In addition, he also conducted another series of approximately twenty interviews with students, which he tape recorded, with the school district's attorney present.

Because the interviews she sat in on were proceeding too fast to transcribe everything, Oppergard tried to summarize what the students told the police. Oppergard took notes of the police interviews she attended and testified that Cullen asked her to destroy these notes, which Cullen denied. Upon request at trial to produce his tapes, Cullen stated that he did not have them and did not know where they were. Those tape recordings have apparently disappeared. Her notes, therefore, represent the only contemporaneous record of the numerous and extensive interviews of these students.

Cullen was a key witness for the People. To attempt to explain the discrepancy between the allegations of students that the defendant was touching people improperly, and the fact that many adults in the school building who went into the defendant's classroom unannounced never saw the defendant improperly touching anyone, Cullen offered into evidence an "early warning system" adopted by the defendant. The essence of this testimony was that the

placement of the defendant's desk provided the defendant an early warning system to detect individuals who were about to walk into his classroom. According to Cullen, a 3–foot shadow would precede a person's going into the classroom, thereby giving the defendant about 2 seconds to pull his hands out of the pants or shirt of a female student (or 3 or 4 seconds if the door was closed).

Following Cullen's testimony, several former students testified that during class, in the presence of other students, while at his desk, the defendant put his hand under the victims' shirts, rubbed their breasts, or put his hands in their pants near the vaginal area. The defense claims that the court erred in finding this testimony credible.

The testimony of the three victims—C.M., E.L., and A.C.—was quite similar, not only in their accounts of the defendant's activities but also regarding the absence of any accompanying detail, and in difficulty remembering what really happened in the defendant's classroom, or what they felt at the time.

C.M. was a member of the defendant's 1982–83 fourth grade class. She testified that the touching always occurred at the desk—and customarily a group of other students were at the desk—but that the defendant never touched her during recess, on the playground, or after school. C.M. figured prominently in the so-called "toe incident." The defendant allegedly took off his shoes and put his toes up her legs to her vaginal area while C.M. and two of her classmates—S.M. and C.D.—were underneath the defendant's desk on their stomachs working on a report. This incident represented one of the four counts for which the defendant was convicted. S.M. testified at trial that he was never under the defendant's desk with C.M. At trial, C.M. stated that it could have been B.P. and not C.D. under the desk and did not know if it was the defendant's toe, but

assumed it was. She was not able to recall a time period when the incident occurred, nor whether the touch of his toe was gentle or forceful.

E.L. was a student in the defendant's 1981–82 fourth grade class, and was a friend and classmate of A.C. She also testified that the "bad touching" occurred only at the defendant's desk while class was in session. She also went to the defendant's desk on her own accord—"lots" —on a typical day, by her own count. She testified that the bad touching occurred throughout the year.

E.L. testified that the defendant touched her under her shirt "lots." She was also touched "lots" in her vaginal area and testified that the defendant touched her over her panties and under her panties "lots both." She acknowledged in a prior statement that the defendant had one hand in her pants, and was grading papers with another or explaining math to her. When improperly touched at the desk, it was always in front of other students who were also at the desk, and in a position where they could have seen her touched.

A.C. was a friend of E.L. and visited in her home. Her testimony was quite similar to E.L.'s. A.C.'s account concerned allegations regarding the defendant's behavior while she was also a student in the defendant's 1981–82 fourth grade class. Again, the "bad touching" occurred only at the defendant's desk while other students were present in the room. A.C. went to the defendant's desk on her own volition; the defendant never requested or directed that she come to his desk. She was at his desk several times a week, while other children were at the desk with her.

The defendant argues that the evidence introduced by the People is highly improbable, contradictory, and contrary to human experience, and falls short of supporting a finding that he is guilty of the charges beyond a reasonable doubt.[1]

---

**1.** As to evidence submitted by the defense, the defendant testified and denied all allegations. He further stated that he did not believe that E.L. or A.C. would have permitted anyone to touch them improperly without informing their parents right away. Former colleagues and parents of former students of the defendant testified that they had never seen anything improper in the defendant's classroom and of their high respect for the defendant as a teacher and per-

## B.

The due process clauses of the United States and Colorado Constitutions prohibit the criminal conviction of any person except on proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–1073, 25 L.Ed.2d 368 (1970); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *People v. Gonzales*, 666 P.2d 123, 127 (Colo.1983). Where the sufficiency of the evidence is challenged on appeal, our task is to determine whether the evidence, viewed as a whole, and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *People v. Schoondermark*, 699 P.2d 411, 414 (Colo.1985); *People v. Mason*, 642 P.2d 8, 13 (Colo.1982). *See also Gonzales*, 666 P.2d at 127 ("the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find that each of the essential elements of the crime charged has been proven beyond a reasonable doubt."), quoting *Jackson v. Virginia*. In giving meaning to this standard, we have stated that the evidence must be "both substantial and sufficient" to support the determination of guilt beyond a reasonable doubt. *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973).

In determining whether any rational trier of fact might accept the evidence, taken as a whole, and in the light most favorable to the prosecution, as substantial and sufficient to support a finding of the accused's guilt beyond a reasonable doubt, this court is bound by certain well accepted principles of law.

■ First, the prosecution must be given the benefit of every reasonable inference which might be fairly drawn from the evi-

dence. *Gonzales*, 666 P.2d at 128; *People v. Downer*, 192 Colo. 264, 268, 557 P.2d 835, 838 (1976). Second, the determination of the credibility of witnesses is solely within the province of the fact finder. *People v. Franklin*, 645 P.2d 1, 4 (Colo.1982); *People v. Walker*, 666 P.2d 113, 120 (Colo. 1983). In weighing the credibility of conflicting testimony, the trial judge who heard and observed the witnesses has many advantages we do not have when we review a transcript. *People v. Parks*, 195 Colo. 344, 349, 579 P.2d 76, 79 (1978). Only when a witness' testimony is "so palpably incredible and so totally unbelievable" may this court properly reject it as a matter of law. *Franklin*, 645 P.2d at 4; *People v. Brassfield*, 652 P.2d 588, 592 (Colo.1982).

Third, it is the function of the trial courts, and not the appellate courts, to weigh the evidence and make findings on the pertinent issues. *Walker*, 666 P.2d at 120. It is the fact finder's function to consider and determine what weight should be given to all parts of the evidence. This includes the resolving of conflicts, inconsistencies, and disputes in the evidence. *People v. Jones*, 191 Colo. 110, 112, 551 P.2d 706, 707 (1976); *People v. Aalbu*, 696 P.2d 796, 811 (Colo.1985). An appellate court is not permitted to sit as a thirteenth juror and set aside a verdict because it might have drawn a different conclusion from the same evidence. *Cokely v. People*, 168 Colo. 52, 57, 449 P.2d 824, 827 (1969).

■ Fourth, a "modicum" of relevant evidence will not rationally support a conviction beyond a reasonable doubt. *Gonzales*, 666 P.2d at 128; *Jackson v. Virginia*, 443 U.S. at 320, 99 S.Ct. at 2789. Finally, verdicts in criminal cases may not be based on "guessing, speculation, or conjecture." *Gonzales*, 666 P.2d at 128; *People v. Urso*, 129 Colo. 292, 297, 269 P.2d 709, 711 (1954).

son. At least six former students denied ever seeing the defendant improperly touch any member of his 1981–82 or 1982–83 classes. Finally, the defense called a clinical psychologist to testify as to the results of his clinical testing and evaluation of the defendant. He concluded that the defendant did not demonstrate any interest sexually in children, nor did he desire to

have any sexual needs met through child relationships. There were no findings as to the defendant's character and profile which would in any way suggest pedophilac behavior. In fact, the psychologist testified that the background and characteristics of the defendant are counter-indicative of the behavior alleged in the accusations.

■ Applying these principles to the instant case, we believe that the questions, contradictions, and inconsistencies in the People's case do not rise to that level where this court can confidently state as a matter of law that the evidence presented was insufficient to find the defendant guilty. The defense of absolute denial presented by the defendant made the central issue at trial one of credibility; *i.e.*, the allegations of the alleged victims as compared with the denials offered by the defendant. The trial court, having heard and observed the witnesses, is in the best position to evaluate the credibility of all the witnesses and to weigh the conflicting evidence. *Franklin*, 645 P.2d at 5; *Walker*, 666 P.2d at 113. The trial court, acting as the fact finder, heard all of the testimony presented and chose to believe the children rather than the defendant. We cannot set aside a verdict simply because we might have drawn a different conclusion from the same evidence. *People v. Marques*, 184 Colo. 262, 270, 520 P.2d 113, 117 (1974); *Cokely*, 168 Colo. at 57, 449 P.2d at 827; *People v. Trujillo*, 189 Colo. 206, 209, 539 P.2d 1234, 1236 (1975).

Viewing the evidence as a whole and in a light most favorable to the prosecution, a rational trier of fact could find that each of the essential elements of the crime charged has been proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789; *People v. Gonzales*, 666 P.2d at 127.

Because the testimony of the alleged victims, if accepted as true, provides sufficient evidence for a conviction on these charges, this is not a case where we can declare the evidence insufficient as a matter of law. Thus, the instant case is unlike *People v. Dererra*, 667 P.2d 1363, 1371 (Colo.1983), where we declared that a touching by the defendant of the alleged victim on her mid-thigh and his vague admission that he was "coming on" to the

victim is insufficient evidence to establish any intent to commit the crime of second-degree sexual assault. Given that the defendant raises on appeal questions going to the weight of the evidence, the resolution of which is directed to the fact finder, we cannot enter a judgment of acquittal.

### III.

The defendant contends that he was insufficiently apprised of the charges against him to enable him to adequately prepare his defense, and protect himself against double jeopardy. This claim encompasses the defendant's objection to the sufficiency of the bill of particulars and the trial court's failure to require the People to elect a specific act upon which they would rely for conviction.

### A.

Given the general nature of the language in the information, which described the defendant's acts only by echoing the statutory language and which stated that the acts were committed within very broad time frames,[2] the defendant moved for a bill of particulars as to acts charged in the information. As to the counts alleging sexual assault on a child, the defendant requested that the prosecution particularize: (a) "The specific act and place of occurrence that the prosecution intends to rely upon in supporting the allegation ..."; and (b) "The particular date between the dates alleged in the information in which the act occurred upon which the prosecution intends to rely." Similar information was sought with respect to those counts alleging child abuse. The court granted the motion, but limited its order, requiring only that the prosecution answer the bill to the "best of the [district attorney's] knowledge and belief."

The bill of particulars submitted by the People stated that "said responses reflect

---

2. For example, count 8 of the information specified "that between and including the 31st day of August, 1981, and the 30th day of June, 1982, in the County of Arapahoe, State of Colorado, [defendant] did unlawfully, feloniously, and knowingly subject another, namely [E.L.], not his spouse to sexual contact, and E.L. was less than fifteen (15) years of age and [defendant] was at least four (4) years older than E.L.; in violation of section 18-3-405 ... SEXUAL ASSAULT ON A CHILD...."

reasonable and diligent effort to specify the time, place, child abuse subsections and specific acts which constitute the crimes charged, in light of the particular nature of the offenses and the tender years and circumstances of the victims-witnesses." The People's response was still quite general, and because it allegedly impeded the defendant in the preparation of his defense, forms a basis for this appeal. For example, in count 8, the bill of particulars specifies that, as to E.L., the defendant engaged in "touching on breasts numerous times and between legs," in the classroom at Ora Oliver Elementary School, on and between September 1, 1981 and June 30, 1982. When the information was amended in November 1983 to include the additional counts, the defendant moved for an amended bill of particulars, requesting the same information sought for the original nine counts. The People submitted an amended bill of particulars, with responses similar to those in the first bill.[3]

■■■ Even in a legally sufficient accusation, the defendant may need additional information as to the crime charged, in which case he may be entitled to a bill of particulars. C. Torcia, 2 *Wharton's Criminal Procedure* § 355 (12th ed. 1975 & Supp.1987). The purpose of a bill of particulars is to enable the defendant to properly prepare his defense in a case where the indictment, although sufficient to advise the defendant of the charges against him,

is nonetheless so indefinite in its statement of a particular charge that it does not afford the defendant a fair opportunity to procure witnesses and prepare for trial, especially through the avoidance of prejudicial surprise. *People v. District Court,* 198 Colo. 501, 503, 603 P.2d 127, 129 (1979); *Balltrip v. People,* 157 Colo. 108, 113, 401 P.2d 259, 262 (1965). A bill of particulars can also provide protection against a subsequent prosecution for the same offense. *United States v. Burgin,* 621 F.2d 1352, 1359 (5th Cir.1980). Moreover, where the information is essential to the defense, failure to grant a request for a bill of particulars may constitute reversible error. *United States v. Williams,* 679 F.2d 504, 510 (5th Cir.1982).

■■■ Nevertheless, the defendant is not necessarily entitled to receive all the information requested. *People v. Lewis,* 671 P.2d 985, 989 (Colo.App.1983). A motion for a bill of particulars will be denied which calls for conclusions of law or the legal theories behind the prosecution's case, or which seeks to obtain discovery of the evidence upon which the prosecution will rely at trial. *People v. District Court,* 198 Colo. at 504, 603 P.2d at 129; *Balltrip,* 157 Colo. at 113, 401 P.2d at 262; *People v. Stratton,* 677 P.2d 373, 376 (Colo.App. 1983). *See generally* 2 *Wharton's* § 355.

Here, the defendant sought, in addition to particulars regarding acts and places of

---

3. The complete bill of particulars reflecting the original and amended counts of the information, but deleting those counts dealing with child abuse, which were dismissed at the beginning of trial, reads in pertinent part:

COUNT 1: Not applicable.

COUNT 3: Victim: C.M.
 Acts: Touching on back, on breasts, numerous times and between the legs approximately 5 times.
 Place: Classroom, Ora Oliver Elementary School
 Dates: On and between Sept. 1, 1982 & Oct. 20, 1982

COUNT 4: Victim: C.M.
 Acts: Touching with toes between the victim's legs.
 Place: Classroom, Ora Oliver Elementary School
 Dates: On and between Oct. 1, 1982 & Oct. 20, 1982

COUNT 6: Victim: J.W.
 Acts: Touching on breasts, touching between legs several times.
 Place: Classroom, Ora Oliver Elementary School
 Dates: On and between Oct. 1, 1982 & Oct. 20, 1982

COUNT 8 Victim: E.L.
 Acts: Touching on breasts numerous times and between legs.
 Place: Classroom, Ora Oliver Elementary School
 Dates: On and between Sept. 1, 1981 & June 30, 1982

COUNT 10 Victim: A.C.
 Acts: Hands inside shirt rubbing back 8 to 9 times and chest 2 to 3 times, and under bra rubbing bare chest.
 Place: Classroom, Ora Oliver Elementary School
 Dates: On and between Sept. 1, 1981 & June 30, 1982

occurrence, more specific information regarding the dates of the alleged sexual assaults.

The general rule is that where time is not a material element of the offense, the precise time at which the crime is charged to have been committed is not material. *Marn v. People*, 175 Colo. 242, 247–48, 486 P.2d 424, 427 (1971). *See also State v. Hauck*, 172 Conn. 140, 374 A.2d 150 (1976) (legitimate for state to comply with court order requesting exact date or dates to "the best of its ability"). *Clinebell v. Commonwealth*, 3 Va.App. 362, 349 S.E.2d 676, 679 (1986); *State v. Armstrong*, 238 Kan. 559, 712 P.2d 1258 (1986); 2 *Wharton's* § 355. This is especially true where the defendant has not shown how his defense is prejudiced by the refusal of the trial court to order the prosecution to furnish more exact information with respect to dates. *State v. Sills*, 311 N.C. 370, 317 S.E.2d 379, 382 (1982); *State v. Moesch*, 738 S.W.2d 585, 588 (Mo.App.1987) (failure to provide precise time neither essential nor decisive where alibi or non-access was not a viable defense).

If, however, information about the time when the alleged crime was committed is necessary to enable the defendant to prepare his defense or to guard against a subsequent prosecution for the same crime, such information must be provided. 2 *Wharton's* § 355; *Billingsly v. United States*, 16 F.2d 754 (8th Cir.1926); *State v. Hicks*, 666 S.W.2d 54 (Tenn.1984).

In a typical case involving a bill of particulars, the trial court has denied or granted an order for a bill and the issue on appellate review is whether the trial court abused its discretion. *See, e.g., People v. District Court*, 198 Colo. at 501, 603 P.2d at 127; *Balltrip*, 157 Colo. at 108, 401 P.2d at 259. In the instant case by comparison, the court granted the defendant's motion for a bill of particulars, but limited its order to the "best of the [prosecution's] knowledge and belief." The question is whether that qualifying instruction comports with the defendant's constitutional right to be apprised of the charges against him. *People v. Donachy*, 196 Colo. 289,

291, 586 P.2d 14, 15 (1978). Our standard of review should be the same whether the trial court denies a motion for a bill of particulars, or grants the motion subject to limitation: Whether the bill of particulars as produced sufficiently informs the defendant of the particular charges at issue so that he is given a fair opportunity to properly prepare his defense.

In reviewing cases where courts have ruled against the defendant and found the prosecution's response adequate, important differences from the instant case stand out. Here, the defendant has not been provided information which sets forth in precise terms the nature of the conduct alleging the crime. *People v. Rubanowitz*, 688 P.2d 231, 239 (Colo.1984) (conduct allegedly constituting theft set forth in particular detail). Nor has the defendant been provided with a detailed accounting of the overt acts sufficient to sustain his conviction. *United States v. Barbieri*, 614 F.2d 715, 719 (10th Cir.1980). In other cases where the prosecution's response was declared adequate, the defendant was given information which informed him of, *inter alia*, specific facts involved in two alleged criminal incidents, as well as the date of the act sufficiently precise to encompass a one-week period, *State v. Griffin*, 386 N.W. 2d 529 (Iowa App.1986), or the indictment itself (charging the defendant with lewd fondling of his daughters), as well as a police report given the defendant, apprised the defendant of the specific time, date, location, as well as brief descriptions of the alleged incidents. *People v. McMillan*, 86 Ill.App.3d 308, 407 N.E.2d 207 (1980).

Moreover, even conceding that a specific date need not be produced, still a number of courts have found sufficient bills of particular which succeeded in narrowing the time frame with which the defendant must deal. *See especially State v. Walker*, 506 A.2d 1143 (Me.1986) (state's proof concentrated on two periods of several days duration; defendant not forced to account for every waking moment); *People v. Willette*, 109 A.D.2d 112, 490 N.Y.S.2d 290 (1985) (indictment refers to a specific month for each count; time of day narrowed by bill of

particulars provided sufficient notice to defendant); *Bonds v. State,* 51 Md.App. 102, 442 A.2d 572 (1982) (state's bill of particulars named three specific dates on which the alleged acts might have occurred).

The bill of particulars provided the defendant, however, is so general concerning a description of any specific acts allegedly committed by the defendant as to empty the word "particular" of all meaning. Specific acts were listed in terms of "touching on back," "on breasts, numerous times," and "between the legs several times." *See* n. 3. Details are not even provided for the one incident the People could presumably put forth with the greatest particularity—the toe incident involving C.M. Nor does it make sense to speak of "the date, on or about, when the acts took place" when the dates of the crimes for which the defendant was actually prosecuted at trial cover (with one 3–week exception) periods ranging from 6 weeks to 9 months. In fact, the bill of particulars furnished little more information than was already provided in the information. The same broad and over-inclusive time frames are alleged in the bill as in the information, with the only change the inclusion of "touching" and certain bodily parts as the guide to the specific conduct alleged.

It is not clear from the record the extent to which the People made a credible attempt to narrow the time frames put forth, and which would be consistent with an order directing the district attorney to comply to the "best of [his] knowledge and belief," (other than by alleging evidentiary problems associated with child witnesses). We do believe, however, that the combination of the broad time frames and the absence of any accompanying detail describing the defendant's alleged acts emphasize the need for greater specificity, and that the bill as produced resulted in clear prejudice to the defendant. This prejudice, further, substantially undercut the defendant's ability to mount a successful defense to the charges.

The bill of particulars was not sought by the defendant for discovery purposes, or to gain access to the People's legal theories.

Rather, it was sought for the purpose of enabling the defendant to prepare his defense. As it was, however, the absence of any further detail as to specific acts and/or dates forced the defendant into the position of relying upon an all-inclusive "denial" defense. The only alternative would have been trying to account for every moment in the classroom for a one-year period—an impossible endeavor. When the People produced their evidence at trial, it consisted of testimony by three girls in two different classes of "lots and lots" of improper touching over a period of time (with the exception of the toe incident) ranging from six weeks to nine months. Without any greater specificity, the defendant was deprived of even an alibi defense. An elementary school teacher confined to a single classroom still attends conferences, gets sick, and is aware of students, teachers, and parents coming into his or her class at particular points of time.

In the past, this court has approved orders requiring the prosecution to provide bills of particular where the charges "are broad in scope, involving a number of people and acts allegedly committed over a long period of time." *People v. District Court,* 198 Colo. at 504, 603 P.2d at 129. In the same spirit, the instant case also involves long time frames, several alleged victims, and numerous incidents of alleged improper sexual contact. The standard set by the district court—to the "best of the [district attorney's] knowledge and belief" —was quickly reduced to almost a nullity in terms of providing the defendant with "particulars" for the preparation of his defense.

Because in our judgment the defendant has adequately demonstrated a clear and specific showing of prejudice caused by the People's response to his motion for a bill of particulars, *cf. State v. Hauck,* 172 Conn. 140, 374 A.2d 150, 156 (1976) (but finding no prejudice); *People v. Barela,* 689 P.2d 689, 691 (Colo.App.1984) (but finding no prejudice), we hold that the failure to provide more specific information in terms of

particular acts and a narrowing of the time frame was error.[4]

### B.

At the close of the People's case, the defendant moved for an order requiring the People to "select a specific act upon which they are relying for ... conviction." The People responded to the defendant's motion as follows:

[O]ur view is that we are not required by the law to elect an act, but only to establish an act within the time frame set forth in the count, the active counts being counts 3, 4, 8, and 10. Our bill of particulars and amended bill of particulars indicate that due to the nature of the children's recollection, the nature of the act, the acts they were subjected to, and because of their ages and lack of time anchor, it is in fact impossible for the People to be able to establish any specific act.

Although the Court has heard specific acts, we could not possibly establish the specific act with the time frame. I don't believe we are required to do so, and this is in fact why we gave the defense advance notice before trial of our desire to go with similar transaction evidence, as well as notice immediately before trial, together with our brief. We feel that we only have to show the Court that there was at least an act of sexual contact during the time frame of the complaint, as blended into our bill of particulars, and that would be satisfactory and sufficient for the Court.

In fact, we can't elect an act. It would be an impossibility for me to do that, based upon the evidence the Court has heard, and we don't think that we're required to do so.

The court thereupon denied the defendant's motion, ruling as follows:

It's the Court's opinion that the time frames that have been alleged are sufficient, that the District Attorney has elected to file one charge as to all incidents that may have occurred within the time—dates and times stated in the complaint or the specific counts in the information. It is the Court's feeling that thereby the District Attorney has prevented by their own actions in prosecuting any other specific charges and must ask that the Court rule as in all instances that may have occurred within this time frame.

There were arguments that the District Attorney had established that on each separate date an offense of the alleged nature had occurred. The District Attorney is precluded from prosecuting them as separate counts by their actions in specifying the time period alleged. I deny the motion to require the District Attorney to elect a specific date, as the District Attorney's evidence, whether it be as to any specific incident or as to the other incidents which are a result of their allegations of a common mode or manner, scheme or design, are such that only one conviction could be had.

This denial of the defendant's motion constitutes error. *People v. Estorga*, 200 Colo. 78, 612 P.2d 520 (1980).

In *Estorga*, the defendant was convicted of sexual assault on a minor. There, as here, the charges were broadly framed with general allegations of sexual contact, and no specifics were presented as to the dates of the alleged offenses. The prosecution introduced evidence of several acts of sexual contact. At the close of the People's case, the defendant moved that

---

**4.** The defendant points out that when more specific information was provided as to the acts alleged in the information, he was able to mount a successful defense, as illustrated in the court's dropping of count 1 of the information, dealing with the slapping incident allegedly involving V.A., after the preliminary hearing to determine probable cause. V.A. claimed that the defendant had touched her on only one occasion—October 15, 1982—the date the de-

fendant was suspended and the four girls went to see the principal. As the defense pointed out, if V.A. was not touched until October 15, 1982, how was it possible that she was part of a group meeting for weeks to see the principal about improper touching, and why was her name given to K.M.'s mother before October 15 as an alleged victim of the defendant's continual improper touching?

the court order the People to elect a specific instance of sexual assault and to rely on that instance for conviction. The court denied the motion and we reversed, holding that:

> [W]here there is evidence of many acts, any one of which would constitute the offense charged, the People may be compelled to select the transaction on which they rely for a conviction. The People are not required to identify the exact date of the offense, but they must individualize and select a specific act.

200 Colo. at 81, 612 P.2d at 523.

Citing *Burlison v. State*, 501 S.W.2d 801 (Tenn.1973), we stated that the "important reasons for requiring election of a specific act" lie in enabling "the defendant to prepare and make his defense to a specific charge," and in assuring "that some jurors do not convict on one offense and others on a separate offense." *Id.*

A difference between *Estorga* and the instant case is that in *Estorga* the trial was to a jury, and an erroneous jury instruction may have compounded the trial court's error with respect to the election of a specific act. Nevertheless, those cases we relied upon in *Estorga* for the general rule regarding the election of specific acts do not limit the rule to jury cases. In those cases, the prosecution was required to select an act upon which it was going to rely for a conviction, and the only remaining issue was the time when such election could be compelled (before the introduction of any evidence, during the progress of the trial, or at the close of the People's case), with the consensus rule being at the close of the People's case. *See Shier v. People*, 116 Colo. 353, 181 P.2d 366 (1947); *Wills v. People*, 100 Colo. 127, 66 P.2d 329 (1937); *Schreiner v. People*, 95 Colo. 392, 36 P.2d 764 (1934); *Laycock v. People*, 66 Colo. 441, 182 P. 880 (1919).[5]

Of the two rationales underlying *Estorga*, that dealing with jury unanimity obviously has no relevance here, but that still leaves the rationale concerning the accused's defense preparation, which is a compelling one and is at the heart of the defendant's rights to due process and a fair trial.

In issuing its ruling, the district court did not properly analyze the defendant's request. First, although the defendant would have preferred that the prosecution provide more specific information as to both the time frames alleged in the information and the criminal acts alleged, *see* part III.A., neither the defendant's request with reference to the bill of particulars nor to election of a specific act should be so narrowly understood as a search for a "specific date." What the defendant sought was particularized information as to specific acts, which would allow for the preparation of an adequate defense. Second, the trial court's ruling suggests that it was balancing the defendant's *Estorga* rights against limitations prohibiting the People from prosecuting the defendant for more than one alleged act within the time period covered under each count of the information. But just because the People were limited to one conviction for each count (covering as it did weeks or months of time), does not mean that grouping several alleged acts in one count without requiring the People to select a specific act on which they would rely for conviction satisfies concerns relating to preparation of the defense.

In its opinion, the court of appeals stated that "[g]iven the specificity of the testimony ... there can be no doubt as to which transaction the trial court relied upon for conviction." At 947. Apart from severe doubts that allegations of "lots and lots" of touching over broad time frames can be classified as specific testimony, an examination of the People's response to the defendant's motion reveals that the prosecution was not relying upon a specific transaction as to each count. To the contrary, the People admitted that given the problems associated with the victims

---

5. Moreover, in *Burlison,* the case we relied upon in *Estorga,* the Tennessee Supreme Court held that the election of a specific instance upon which the prosecution intends to rely for conviction "is equally fundamental, immediately touching the constitutional rights of an accused, and should not depend upon a demand therefor." 501 S.W.2d at 804.

and their testimony "it is in fact impossible for the People to be able to establish any specific act," and did not feel "that we're required to do so." Nor did the court feel that such an election was necessary.

■ The People proceeded at trial to introduce testimony relating to an incident remembered by the child, followed by evidence of similar incidents—which generally consisted of testimony of "lots" of whatever was alleged with respect to the original incident—to prove common plan, scheme, or design pursuant to section 16–10–301, 8A C.R.S. (1986). Contrary to arguments presented by the People, we do not believe that the presentation of common scheme or design evidence pursuant to section 16–10–301 obviates the need for an *Estorga* selection. For *Estorga* requires that "where there is evidence of many acts, any one of which would constitute the offense charged, ... the People ... must *individualize and select a specific act.*" 200 Colo. at 81, 612 P.2d at 523 (emphasis added). Introducing general and unspecified allegations of "lots" of touching on private bodily parts followed by testimony that such touching occurred on "lots" of occasions to prove common scheme or plan does not constitute compliance with the strict commands of *Estorga.*

If the prosecution finds it impossible to identify a specific act upon which it is going to rely for a conviction, how can the defendant or the court? If the court selects the act, then the court assumes the prosecutorial role and participates in the charging process, clearly not its function. In the instant case, the trial court's "findings" were rather brief and contain no reference to a specific act upon which its judgment was based. But even if the court had made findings of fact with explicit discussion of a specific act, at that point the "selection" would have been of no assistance to any defense preparation since the trial was over.

■ Because one leg of *Estorga* is directed toward the defendant's ability to prepare his defense to a specific charge, some of the same concerns underscore the defendant's rights on this issue as were

discussed with reference to the bill of particulars, in part III.A. By allowing the fact finder to pick and choose any act within the broad time frames charged, it becomes nearly impossible for a defendant to use an alibi as a defense. In not having the prosecution select a specific act within a more particular time frame, the defendant was foreclosed from presenting contradictory evidence, other than a general denial as to all charges, and statements by other students, parents, and teachers that they had never observed improper touching in his classroom. Certainly, the defendant's cross-examination would have been more effective if he could have examined the witnesses on their recollections of a more specific act or limited time frame.

The instant case is to be contrasted with a number of cases decided since *Estorga* in which Colorado courts have held that *Estorga* is not applicable. In *People v. Green,* 658 P.2d 281, 282 (Colo.App.1982), the defendant was tried on three separate counts of sexual assault. Each count was premised on a single specific transaction. At trial, although the People introduced evidence of more than one transaction, the evidence was segregated and identified with the particular count of the information. In *People v. Barela,* 689 P.2d 689 (Colo.App.1984), the court upheld the trial court's determination that an *Estorga* selection was not required. But in *Barela,* the evidence demonstrated "a continued pattern of conduct" resulting in the crime (felony child abuse), such that election of a specific date and instance would be improper. 689 P.2d at 691. In the instant case by comparison, the defendant was accused of numerous acts, any one of which would support a conviction of sexual assault on a child. *See also People v. Collins,* 730 P.2d 293 (Colo.1986) (defendant's reliance on *Estorga* misplaced, the trial court need not require the prosecution to elect between the charged crimes when only one transaction occurred); *People v. Wright,* 678 P.2d 1072 (Colo.App.1984) (defendant charged with alternative means of committing crime within a single count, not with two distinct offenses in separate counts, and evidence

was presented regarding a single transaction).

The People's position in this case seems premised upon the argument that the evidentiary difficulties involving children in sexual assault cases mandate a different constitutional standard for defendants accused of those crimes. But the rights of the accused should not depend upon the difficulties involved in specifying a criminal act. In fact, it is in cases such as this one, with substantial and close questions involving a determination of the defendant's guilt beyond a reasonable doubt, that concerns regarding notice and the need to prepare an adequate defense are most acute. While we are sensitive to the special nature of the child sexual assault case, we are unwilling to deviate from our rule that "where there is evidence of many acts, any one of which would constitute the offense charged," *Estorga*, 200 Colo. at 81, 612 P.2d at 523, the accused should be able to prepare a defense to the crime(s) for which he is charged based upon a specific incident of unlawful conduct.

## IV.

Finally, the defendant alleges that the trial court improperly limited his cross-examination of Cullen. We will address this remaining issue, since it is likely that the defense would pursue a similar line of questioning if the People retry the defendant.

Cullen was a critical witness in the People's case against the defendant. He was aware that Juanita Oppergard, the school psychologist, took notes of the initial police interviews with the students from the defendant's classrooms, and admitted that he had occasion to review her summaries of these interviews. Cullen was also aware that information derived from these interviews was used in the preparation of charges against the defendant.

After the charges were filed, Cullen was present during the interviews of approximately 20 students by the attorney for the school district, during which a number of students apparently recanted prior statements given to the police and gave inconsistent statements seriously undermining the information relied upon by the prosecution during their investigation of the defendant. For example, notes prepared by the attorney in Cullen's presence stated of one child: "Do not use this witness. Changes her mind." Although these interviews were tape recorded by Cullen, he failed to produce the tapes at trial, stating that he did not have them and was not aware "of whether they've been erased or not."

During cross-examination of Cullen, the defendant attempted to inquire into instances where certain students had recanted statements given during the initial police interview. Because Cullen was present during the interviews with the school district's attorney, the defense wanted to determine if he was aware that a number of specifically named students had changed their minds. If so, a further line of inquiry concerned whether Cullen had informed the police and the prosecution of the recantation of these witnesses. If Cullen, as the school official most responsible for assisting the police in its investigation of the defendant, had, in fact, participated in the concealment of material evidence, that would, of course, have a major bearing on his bias as a witness.

The defense, therefore, was not inquiring of Cullen for the purpose of asserting the truth or falsity of these matters—whether the children had actually recanted their previous statements—but only for the purpose of shedding light on the credibility of this key prosecution witness.

As defense counsel began to inquire about specific instances where students had recanted previous testimony during the interview with the school district's attorney in Cullen's presence, the People objected on hearsay grounds. The court expressed concerns regarding the relevancy of this testimony.[6] After the defendant's counsel

---

6. In the words of the court:

I think it's simply too far out. We can talk about everybody's motives for everything they've done, but I'm concerned about the issues directly raised by the information, and I think it is just too far afield in terms of

pointed out that a number of students had recanted their testimony in front of Cullen, the court allowed the defendant to proceed, subject to this limitation:

> All right. What I am going to do is this: I'll allow you to ask these questions, but only after the basis for the questions is established by your own examination of the witnesses who would establish that. If you can establish that in your own case, I'll allow you to recall Dr. Cullen and ask him these questions. But at this point I'll sustain the objection.

The defendant's counsel went on to ask Cullen whether "any of those students, who had told the detectives in the presence of Juanita Oppergard that they had seen Mr. Kogan's hands in pants and blouses, then changed their story and say that they did not see it? Did any of them, to your knowledge, in your presence, change their story—yes or no?" The People objected on the grounds that no foundation had yet been established for the witness to know what the children had told Juanita Oppergard. The court overruled the objection because defense counsel had limited the question to "in his presence." The defense was thus permitted to ask whether students in general—as opposed to specific students—had changed their stories. Cullen answered by saying: "I think there was a change in a few students and in the amount of time they saw things happen, and specifically, what they saw happen, yes." Defense counsel went on to ask: "The changes were that people said they had seen something in the pants, and then they did not see anything, but particularly changes in that they did not see the hands in the pants?" To which Cullen responded: "I think that occurred a number of times." The defendant argues that the trial court's

limitation on his cross-examination of Cullen was prejudicial to his defense, and therefore, constituted an abuse of discretion.

The right of a defendant in a criminal prosecution to confront adverse witnesses is a fundamental element in the panoply of constitutional protections afforded those accused of crimes. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *People v. Rubanowitz*, 688 P.2d at 243; *People v. Loscutoff*, 661 P.2d 274, 277 (Colo.1983). *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110. Further, the exposure of a witness' motivation in testifying is a proper and important function of his constitutionally protected right. *Id.* at 316–17, 94 S.Ct. at 1110–1111.[7]

*Davis* was cited with approval in *People v. Taylor*, 190 Colo. 210, 545 P.2d 703 (1976). In that case we held that cross-examination should be liberally extended to permit a thorough inquiry into the motives of witnesses.

> Within broad limits, any evidence tending to show bias or prejudice, or to throw light upon the inclination of witnesses, may be permitted. The trial court must, however, exercise its sound discretion to preclude inquiries that have no probative force, or are irrelevant, or which have little effect on the witness' credibility but would substantially impugn his moral character.

*Id.* 190 Colo. at 212–13, 545 P.2d at 705 (citations omitted). *See also People v. Walker*, 666 P.2d at 122 ("cross-examina-

---

relevancy, and in view of the amount of time that we apparently are going into this.

**7.** In *Davis v. Alaska*, the United States Supreme Court underscored the broad latitude given defense counsel in probing a witness' potential bias on cross-examination:

> Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness'

story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness.... A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. 415 U.S. at 316, 94 S.Ct. at 1110.

tion by questions which focus on the motive of a witness is liberally permitted.").

Moreover, in *Taylor*, we went on to state that a party who on cross-examination inquires into bias is not bound by a denial of the witness, but may contradict him with the evidence of other witnesses. 190 Colo. at 213, 545 P.2d at 705 (noting Colorado more "liberal" than majority of jurisdictions in permitting introduction of evidence as to bias of witnesses).

 This right of cross-examination is, of course, tempered by a trial court's authority to prohibit cross-examination on matters wholly irrelevant and immaterial to bias, prejudice, or other issues at trial. *Rubanowitz*, 688 P.2d at 243; *Loscutoff*, 661 P.2d at 277. Dangers exist in too readily admitting extrinsic evidence relating to bias. The trial court is therefore charged with seeing that the "sideshow does not take over the circus." *Taylor*, 190 Colo. at 213, 545 P.2d at 706. Since the constitutional right of confrontation necessarily depends upon the particular circumstances of a particular criminal proceeding, we have stated that such determination is committed to the sound discretion of the trial court. *Rubanowitz*, 688 P.2d at 243.

 In our judgment, the trial court placed unnecessary and unwarranted obstacles in the path of the defendant's cross-examination of Cullen. These restrictions were prejudicial to the defendant's ability to mount a competent defense, and therefore, constituted an abuse of discretion.

When cross-examining Cullen regarding specific instances of different or inconsistent stories by the children, defense counsel's purpose was not impeaching the students—but rather impeaching Cullen regarding his possible bias against the defendant. The truth or falsity of the students' statements about the defendant was not then at issue; the rationale behind this line of inquiry was uncovering what might have been stated by the children in Cullen's presence, the concealment of which would

have a major bearing on his bias as a witness. Such evidence—used to illustrate the principal's state of mind—was not being offered for the truth of the matter asserted. *See* CRE 801, 803. Since evidence of changed testimony on behalf of the children was used only for the purpose of testing Cullen's possible bias, there was no need to have to establish a foundation for the introduction of such testimony by first summoning the children to testify. *Taylor*, 190 Colo. at 213, 545 P.2d at 706; *Angelopoulos v. Wise*, 133 Colo. 133, 136, 293 P.2d 294, 296 (1956).

Contrary to the court of appeals, we believe the trial court's limitation of the cross-examination was prejudicial to the defendant. *See* p. 948. In our judgment, the defendant was denied his right to effective cross-examination of a key prosecution witness. We cannot accept the conclusion that the cross-examination as limited at trial permitted the defendant to adequately develop the issue of bias. *Davis*, 415 U.S. at 317, 94 S.Ct. at 1111.

Cullen's testimony did much more at trial than explain the interior design of the defendant's classroom. His testimony was a key weapon in the prosecution's arsenal, and succeeded in incriminating the defendant. It was Cullen who devised the "early warning system" to explain why no adults had ever seen any improper touching in the defendant's classroom. Cullen directed the initial investigation; an investigation that, appearing from the record, presumed from the outset the defendant was guilty, and that the only useful evidence was that directed toward substantiation of this predetermined outcome. Cullen's behavior has a material bearing on his credibility, and affects the total posture of this case. The defendant's line of inquiry was directed toward exposing—in light of numerous and specific accounts of changed or inconsistent testimony—a potential commitment to prosecute on behalf of the ostensibly impartial and truth seeking school principal.[8]

8. The investigatory procedures used in the instant case fell far short of techniques recommended in the literature to maximize the search for truth and minimize, to the extent possible, inaccuracies used to convict the innocent. At least one study has found that "the least accurate reports were obtained from child witnesses when the interviewer harbored preconceived

We cannot speculate whether the court would have accepted the line of reasoning had the defendant been allowed to fully present it. But we do conclude that the trial court was entitled to have the benefit of the defense theory fully put before it in order to make an informed judgment. *See Davis,* 415 U.S. at 317, 94 S.Ct. at 1111. Defense counsel should have been permitted to expose to the trial court facts from which the court acting as fact finder "could appropriately draw inferences related to the reliability of the witnesses." *Id.* If defense counsel had been permitted to develop this line of questioning, by, for example, confronting Cullen with specific instances of the students' changed or inconsistent testimony, it is quite possible that this would have effected a meaningful difference in the believability the court accorded Cullen, and could have placed a significantly different perspective on the school district's investigation. As a result, we feel that the defendant has adequately shown prejudice in the trial court's limitation of cross-examination.

To briefly review the holding we announce today, we have detrmined that the evidence introduced at trial, viewed as a whole and in the light most favorable to the prosecution, is sufficient to find the defendant guilty of the charges beyond a reasonable doubt. Nevertheless, insufficiencies regarding the bill of particulars, the failure of the trial court to order the prosecution to elect a specific act upon which to rely for conviction, and limitations on cross-examination all constitute error. The cumulative effect of these errors precluded the defendant from receiving a fair trial. *See People v. Botham,* 629 P.2d 589, 603 (Colo.1981); *People v. Reynolds,* 194 Colo. 543, 545, 575 P.2d 1286, 1289 (1978).

Accordingly, the judgment of the Colorado Court of Appeals is reversed, and the case is remanded to that court for remand to the trial court for further proceedings consistent with this opinion.

ERICKSON, J., specially concurs.

VOLLACK, J., concurs in part and dissents in part.

MULLARKEY, J., joins in the concurrence and dissent.

ERICKSON, Justice, specially concurring in the result:

I agree with the majority's conclusion that a new trial is required because of cumulative error. I also agree that the defendant's motion for a judgment of acquittal was properly denied. *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973). I write separately, however, because my analysis of the record requires reversal on a narrower, fact-specific basis.

The petitioner, Edward G. Kogan, does not question the sufficiency of the information in this case. *See People v. Xericos,* 186 Colo. 21, 525 P.2d 415 (1974) (indictment or information must give defendant sufficient notice of crime to enable him to prepare a defense and to permit him to plead double jeopardy as a bar to subsequent prosecutions). The prosecution concedes that a bill of particulars was necessary since the information did not sufficiently identify the time and nature of the alleged offenses to permit Kogan to interpose a defense. *People v. Estorga,* 200 Colo. 78, 612 P.2d 520 (Colo.1980). Since this was a trial to the court rather than a jury, the standard of review of the trial court's rulings is whether there was an abuse of discretion. On the record, it is difficult for us to say that any of the errors asserted, standing alone, constitute an

---

notions about what happened. Interviewers with preconceptions tended to direct the questioning so as to confirm their own suspicions rather than to obtain accurate reports." Goodman & Helgeson, *Child Sexual Assault: Children's Memory and the Law,* 40 U.Miami L.Rev. 181, 195 (1985–86). Among the recommended techniques to elicit the most truthful accounts from child victims: Using unbiased and highly trained professionals as interviewers; severely

restricting the use of suggestive questioning; interviewing students with their parents in relaxed surroundings; avoiding the use of adult labels in discussing alleged sexual assaults; videotaping all interviews; and keeping the number of interviews to a minimum. *Id.* at 192–200. *See also Are The Children Lying?,* 73 A.B.A.J. 59, 61 (May 1987) ("[c]hildren may interpret repeated interviews as demands for more or different information....").

abuse of discretion. As the majority concludes, the cumulative effect of the errors committed by the trial court require that the defendant be granted a new trial. *People v. Botham*, 629 P.2d 589 (Colo.1981).

The trial court's requirement that the prosecution provide a bill of particulars "to the best of the prosecution's knowledge and belief," defeated the purpose behind the bill of particulars and was error. *See Self v. People*, 167 Colo. 292, 448 P.2d 619 (1968) (denial of bill of particulars within the discretion of trial court); *Balltrip v. People*, 157 Colo. 108, 401 P.2d 259 (1965) (same). Although the trial court granted petitioner's motion for a bill of particulars, the requirement imposed by the court made the order tantamount to a denial of the motion. In this case, the broad language in the bill provided little more detail than the concededly general language in the information. The court's failure to require that the bill specifically describe the acts charged prejudiced Kogan's ability to interpose a defense and was error.

Under *People v. Estorga*, 200 Colo. 78, 612 P.2d 520 (1980), the court also erred when it refused to make the prosecution select the specific act relied on for conviction. *Estorga* addressed a motion to elect and said:

> [W]here there is evidence of many acts, any one of which would constitute the offense charged, the People may be compelled to select the transaction on which they rely for a conviction. The People are not required to identify the exact date of the offense, but they must individualize and select a specific act.

*Id.* at 81, 612 P.2d at 523; *see Shier v. People*, 116 Colo. 353, 181 P.2d 366 (1947); *Wills v. People*, 100 Colo. 127, 66 P.2d 329 (1937); *Schreiner v. People*, 95 Colo. 392, 36 P.2d 764 (1934); *Laycock v. People*, 66 Colo. 441, 182 P. 880 (1919). One of the purposes of the *Estorga* rule is to enable an accused to determine the specific act that he is alleged to have committed. *Estorga*, 200 Colo. at 81, 612 P.2d at 523. Due process demands that a defendant be afforded a meaningful opportunity to raise an effective defense at trial. In this case,

as in *Estorga*, the defendant was unable to prepare a defense because at trial the prosecution failed to rely on specific conduct of the defendant.

Finally, the requirement of a foundation to cross-examine Dr. James Cullen, the school principal, about specific instances of students recanting their stories was error. *See* CRE 402; *People v. Loscutoff*, 661 P.2d 274 (Colo.1983) (limitation of cross-examination within trial court's discretion); *People v. Schuemann*, 190 Colo. 474, 548 P.2d 911 (1976) (same). Cullen was a critical witness in the prosecution's case since he was the school official responsible for assisting the police in its investigation of petitioner. By uncovering Cullen's bias against Kogan, the excluded testimony would have brought into question both his credibility and the validity of his investigation of the alleged sexual misconduct. *People v. Taylor*, 190 Colo. 210, 545 P.2d 703 (1976). The foundational requirement imposed by the court erected an insurmountable obstacle to Kogan's proposed cross-examination. In view of the record in this case, however, the error does not require reversal.

Considering the nature of the crime, cases of sexual assault on minors are emotionally charged and present substantial potential for prejudice to the defendant. Typically, there is little evidence to support the victim's allegations and the trier of fact must rely solely on the relative credibilities of the victim and defendant in deciding whether to convict. Children are also highly susceptible to suggestion and may not fully understand the seriousness of the charges they make. *Wilson v. United States*, 271 F.2d 492 (D.C.Cir.1959). In this case, the stories of each victim were inconsistent and became more detailed as the police investigation progressed. Juanita Oppergard, the school psychologist, attended police interviews of the students and stated that they were "pointed," "direct," and used leading questions. Testimony indicated that a number of other girls had been sexually molested by Kogan but their testimony was not offered at the trial. The victims who testified at trial attended the same school and their undetailed accounts

of Kogan's behavior were quite similar. Even though all the students in Kogan's classes were interviewed by police and some eighty-eight witnesses were endorsed by the prosecution, the testimony of the victims was largely uncorroborated. Neither Kogan nor his counsel had the opportunity to participate in the police interviews of the victims and other children and the interviews were not tape recorded. The defendant also could not obtain the tape recordings of approximately twenty other interviews conducted by Cullen. *See Cheatwood v. People*, 164 Colo. 334, 435 P.2d 402 (1967) (prosecution has affirmative duty to give defendant exculpatory evidence). Under the circumstances, the cumulative effect of the errors committed by the trial court precluded petitioner from receiving a fair trial.

Accordingly, I agree that the case should be reversed and remanded for a new trial.

VOLLACK, Justice, concurring in part and dissenting in part:

I agree with the majority's holding that the evidence presented in this case was sufficient to support the trial court's verdict as a matter of law. However, I disagree with the majority's finding of cumulative error requiring reversal. I do not believe that the bill of particulars in this case rendered the defendant unable to prepare an adequate defense. I also do not consider the trial court's limitation of defense counsel's cross-examination of Dr. Cullen an abuse of the trial court's discretion. Accordingly, I concur in Part II and dissent from Parts III and IV.

## I.

The majority holds in Part III that the bill of particulars provided by the prosecution rendered the defendant unable to prepare an adequate defense, and that error occurred when the trial court denied the defendant's motion at the end of the prosecution's case-in-chief to compel the prosecution to elect a specific act. I disagree.

## A.

The defendant asserts that because of the descriptions of the sexual acts in the bill of particulars, he was inadequately apprised of the charges against him and therefore unable to prepare an adequate defense. Because the trial court's ruling on this matter was discretionary and the record does not show that the defendant was unable to prepare his defense or that he was otherwise prejudiced, I believe this assertion is without merit.

"An order for a bill of particulars normally rests within the sound discretion of the trial judge." *People v. District Court*, 198 Colo. 501, 503, 603 P.2d 127, 128 (1979). The purpose of a bill of particulars "is to enable the defendant to properly prepare his defense" if the indictment is so indefinite "that it does not afford the defendant a *fair opportunity to procure witnesses and prepare for trial.*" *Id.* at 503, 603 P.2d at 129 (emphasis added) (citing *King v. United States*, 402 F.2d 289 (10th Cir. 1963)). The decision whether it is appropriate to order a bill of particulars therefore depends on the trial judge's determination, given the particular facts of a case, "whether the requested information is necessary for the defendant to *prepare his defense and to avoid prejudicial surprise.*" *Id.* at 504, 603 P.2d at 129 (emphasis added).

At the outset I would note that although the record is unclear, it appears that this issue was not properly preserved for appeal. No objections appear after the prosecution filed the amended bill of particulars. The record does show that the trial court entered a minute order on November 14, 1983, which stated: "Defendant will not challenge Bill of Particulars any further." A transcript of the motions hearing was not included as a part of the record on appeal, so it cannot be ascertained whether the defendant withdrew his objection, or whether the court instructed the defendant that it would not entertain further challenges. "Where ... there has been no showing to the contrary by the appellant, we must presume that the district court's order accurately reflects what occurred at

the hearing." *Parker v. Glazner*, 645 P.2d 1319, 1320 n. 1 (Colo.1987). Without the transcript we must presume that the defendant decided not to challenge the bill of particulars, as indicated in the trial court's minute order. I would therefore hold that the sufficiency of the bill of particulars was not properly preserved for appellate review.

As a result, the bill of particulars must be analyzed under the plain error standard: "whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People*, 743 P.2d 415, 420 (Colo.1987). The facts of this case do not support such a conclusion, especially since this was a trial to the court. A review of the defense asserted in this case shows that a date-specific bill of particulars would not have made a substantial difference in the defense presented, and would not have caused the judge to arrive at a different conclusion. The judge's findings reflect that his decision turned on the credibility of the witnesses.[1]

Even if this issue is properly before this court, I do not believe that the prosecution's inability to provide a more detailed bill of particulars rendered the defendant unable to prepare his case, especially in light of the nature of his defense. As in *District Court*, the allegations here in-

volved " 'a course of conduct rather than one incident.' " *Id.* at 503, 603 P.2d at 128. We upheld the trial court's limited grant of a bill of particulars in *District Court*, and there the "prosecution was not required to indicate the specific days or hours that the alleged acts were committed." *Id.*

The defendant concedes that the prosecution was not required, in this case, to allege a specific date and time for each touching incident. Having so conceded, he apparently asserts that the description of the acts in the bill of particulars rendered him unable to present a defense. Some examples of the acts described are "[h]ands inside shirt rubbing back ... and chest ... and under bra rubbing bare chest" and "[t]ouching on breast numerous times and between legs." The touching incidents occurred in the defendant's classroom. I do not believe that these descriptions of the acts were so inadequate as to amount to reversible error. It is difficult to imagine how descriptions like "[t]ouching on breast," "touching between legs," and "[t]ouching with toes between the victim's legs" could have been more detailed and would have resulted in the preparation of a different or better defense.

A defendant is entitled to "a fair opportunity to procure witnesses." *District Court*, 198 Colo. at 503, 603 P.2d at 129. Here, several of the defendant's peers and students testified on his behalf, and the victim of each count of which the defendant was convicted testified and was avail-

1. The trial court made these findings:

[T]he primary matter that the Court has to consider is whether the persons who are now listed as victims testified truthfully in their testimony.

....

[T]he Court is convinced by the evidence that [C.M.] was telling the truth when she advised that she was touched on her breast by the defendant.

The Court believed that beyond a reasonable doubt, and that all the other requirements of the statute have been met, considering the law that is applicable to the charge made, and therefore finds Edward Kogan guilty of sexual assault on a child as to [Count Three].

As to Count Four, the Court listened to the testimony of [C.M.] and believes that the defendant removed his foot from his shoe and

used his toe to touch [C.M.] between the legs as she was lying underneath his desk and therefore violated the statute of sexual assault on a child ... I therefore find him guilty of sexual assault on a child as to Count Fourt [sic].

As to Count Eight, having listened to the evidence concerning [E.L.], the Court is of the opinion that Mr. Kogan did touch [E.L.] both on her breast and on the intervening clothing around and next to her vaginal area and therefore finds Mr. Kogan guilty ... as to that count.

As to Count Ten, ... the Court, having heard the evidence, finds that the defendant did touch and subject [A.C.] to sexual contact as defined by the statute, ... and that [A.C.] was touched on her breasts by the defendant.... I therefore find him guilty of sexual assault on a child relative to Count Ten.

able for cross-examination at trial. A bill of particulars must afford the defendant a fair opportunity to prepare his defense for trial. *Id.* The defendant asserted the defense of complete denial. He elected to testify at trial and stated that he had "never" in any manner attempted to touch any student in a sexual manner, and did not put his hand in any students' pants or on their breasts.[2] In the case of an alibi defense, it may be necessary to provide a defendant with an exact date or time in order for him to prove his location at the date and time the offense was committed. Where, as here, the defendant did not dispute that he was present in the classroom, and his defense was that he did not commit any of the acts with which he was charged, I fail to see how a more specific description of the acts would enable him to prepare a more effective defense.

The remaining purpose of a bill of particulars is to "avoid prejudicial surprise" to the defendant. *Id.* at 504, 603 P.2d at 129. Again, the defendant has made no showing of either prejudice or surprise. The allegations were sufficiently specific in nature to apprise the defendant of the evidence that would be presented by the prosecution at trial, even though exact dates and times were unavailable. I find nothing in the record to indicate that the defendant was taken by surprise at trial, and the purpose of a bill of particulars is to protect the defendant from prejudicial surprise. *District Court*, 198 Colo. at 504, 603 P.2d at

**2.** Portions of the defendant's testimony were:

Q Did you ever rub [E.L.'s] tummy?
A No.
Q Did you ever rub your hand across her breasts, even by mistake?
A No.
Q Ever touch her nipples?
A No.
Q Did you ever put your hand or hands in [E.L.'s] pants, even to the first joint of any finger?
A Negative.
Q Never?
A Never.
Q How about [A.C.]? Did you ever rub her back with your hand on the outside when she was sitting on your lap?
A Rub her back?
Q Yes.
A I don't know. I might have.

129; *Balltrip v. People*, 157 Colo. 108, 113, 401 P.2d 259, 262 (1965); *People v. Lewis*, 671 P.2d 985, 989 (Colo.App.1983); *see* Crim.P. 7(g), 7B C.R.S. (1984). The defendant did not make an offer of proof establishing the manner in which he was prejudiced, and has not demonstrated how he suffered prejudicial surprise at trial.

The majority notes that the trial court granted the defendant's motion for a bill of particulars and described the order as "limited ... requiring only that the prosecution answer the bill to the 'best of the [district attorney's] knowledge and belief.'" Majority, slip op. at 15. The majority then concludes: *"Our standard of review should be the same* whether the trial court denies a motion for a bill of particulars, or grants the motion subject to limitation...."* At 953 (emphasis added). I do not agree; the limitation imposed in this case hardly had the practical effect of denying the defendant's motion. Presumably, the district attorney would and did answer the bill to the best of his knowledge and belief. I would hold that the trial court did not abuse its discretion in ruling that the bill of particulars was adequate, especially since the record does not show prejudicial surprise to the defendant.

### B.

The defendant asserts, and the majority agrees, that the trial court abused its discretion and committed reversible error under *People v. Estorga*, 200 Colo. 78, 612

Q Okay. Would that have been with your hand?
A I would assume.
Q All right. And did you think that's inappropriate touching?
A No.
Q Now, did you ever rub her on her back with your hands inside of her shirt on the back?
A No.
Q Never happen?
A Never.
Q Did you ever move your hand to the front and touch her on the front, under her shirt?
A Never.
Q How about on the outside of her shirt?
A Never.
....
Q So you're saying you never put your hand on top of her bra, or underneath her bra?
A I think I answered that. I said I didn't.

P.2d 520 (1980), when it declined to require the prosecution to elect a specific act. Specifically, the trial judge ruled that he would not "require the district attorney *to elect a specific date.*" Although this issue overlaps to some extent with the arguments and rationale regarding the bill of particulars, I address it separately because of factual distinctions between *Estorga* and the case at bar. I would conclude that the trial court did not abuse its discretion.

First, an express purpose for requiring the prosecution to "individualize and select a specific act" is to avoid the possibility "that some jurors do not convict on one offense and others on a separate offense." *Estorga,* 200 Colo. at 81, 612 P.2d at 523 (footnote omitted). The danger of non-unanimity, of course, is not present in a trial to the court.

The second factual distinction is that the prosecution's failure to elect a specific act for the jury to consider in *Estorga* "was compounded" because the trial court gave an erroneous jury instruction. No such error could have occurred in the case at bar. *Id.* at 81–82, 612 P.2d at 523.

Third, this case was tried to a judge, not a jury of laypersons. The trial judge as trier of fact is required to weigh conflicting evidence, judge the credibility of witnesses, and draw reasonable inferences from the evidence. *People v. Atencio,* 187 Colo. 226, 529 P.2d 636 (1974); *Garcia v. People,* 172 Colo. 329, 473 P.2d 169 (1970); *Bean v. People,* 164 Colo. 593, 436 P.2d 678 (1968). A different standard is appropriate, under some circumstances, when the trier of fact is a judge and not the jury. *See, e.g., People v. Kirkland,* 174 Colo. 362, 483 P.2d 1349 (1971) (In a trial to the court rather than to a jury, the judge as trier of fact has considerably more leeway in granting a motion for judgment of acquittal.); *Self v. People,* 167 Colo. 292, 448 P.2d 619 (1968) (When trial is to the court rather than to a jury, the time of the admission of a confes-

sion is far less subject to serious objection.).

The defendant's case was tried to a judge who presumably heard and understood the district attorney's direct examination of the victims. With two of the three victim-witnesses, the district attorney elicited certain testimony to establish the act on which the state sought conviction, and presented the remainder of the witness' testimony as evidence of similar transactions. With victim E.L., the prosecution had E.L. testify about a particular incident, and then continued direct examination after explaining: "Judge, I'd like to offer similar transaction evidence relative to other incidents within the same time frame, pursuant to statute, pursuant to my previously filed brief with the Court." When the court asked if the defense had an objection, defense counsel responded: "Fine." When victim C.M. testified, she gave testimony about a particular incident, and the prosecutor then stated that he wished to "go into another brief area concerning similar transactions with this victim," to which defense counsel responded "[n]o objection." The prosecutor neglected to draw this distinction during the testimony of victim A.C. The testimony of V.A., who was not named as a victim, was offered only as similar transaction evidence.

The record reflects that defense counsel made a motion at the close of the prosecution's case-in-chief that the prosecution be required to select a specific act. I agree with the majority that this was the proper time for requiring the prosecution to elect, if election has not already occurred. Slip op. at 26. However, I think the prosecution's direct examination provided the necessary election between acts charged and similar transactions.

On the defendant's contention that the convictions leave him subject to a double jeopardy violation, the court's own ruling specifically disposes of that possibility.[3]

---

3. The trial court held:
All right. It's the Court's opinion that the time frames that have been alleged are sufficient, that the district attorney has elected to file one charge as to all incidents that may

have occurred within the time—dates and times stated in the complaint or the specific counts in the information. It is the Court's feeling that thereby the district attorney is prevented by their own actions in prosecuting

In my view, the record shows that the prosecution expressly elected between incidents during the presentation of its case-in-chief, offering certain evidence to establish a particular incident of assault, and other evidence as similar transactions. I believe the election which took place during direct examination was sufficient. The issue of whether the similar transaction evidence was appropriately admitted has not been raised, and the defense expressly agreed to its admission at trial.

Considering the nature of the defense, the absence of a jury or a flawed jury instruction which "compounded" the error in *Estorga,* and the method in which the testimony was presented, I would conclude that the facts of this case do not rise to the level of error in *Estorga.* I would affirm the discretionary rulings of the trial court.

## II.

In Part IV, the majority holds that the trial judge committed error in limiting defense counsel's cross-examination of Cullen, the school principal.[4] I disagree with the majority's conclusion that the limitation of certain questioning was "prejudicial to the defendant's ability to mount a competent defense, and therefore, constituted an abuse of discretion." Slip op. at 37.

A criminal defendant has the right to conduct liberal cross-examination of prosecution witnesses. *People v. Crawford,* 191 Colo. 504, 506, 553 P.2d 827, 829 (1976). "Absent a showing of abuse or manifest prejudice, limitation of cross-examination does not constitute reversible error." *People v. Moreno,* 192 Colo. 314, 315, 558 P.2d 440, 442 (1976).

During cross-examination of Dr. Cullen, defense counsel sought to question the school principal about students who may have recanted their statements. Dr. Cullen was the second witness for the prosecution; the victims were scheduled to testify after Dr. Cullen. The court's understanding was that defense counsel was "asking these questions of [Dr. Cullen] only for the purpose of determining his credibility as a witness in this case."[5] The court advised defense counsel that it would allow this line

---

any other specific charges and must ask that the Court rule as in all instances that may have occurred within this time frame.

There were arguments that the district attorney had established that on each separate date an offense of the alleged nature had occurred. The district attorney is precluded from prosecuting them as separate counts by their actions in specifying the time period alleged. I deny the motion to require the district attorney to elect a specific date, as the district attorney's evidence, whether it be as to any specific incident or as to the other incidents which are a result of their allegations of a common mode or manner, scheme or design, are such that only one conviction could be had.

4. Because the majority found reversible error in Part III and orders the case remanded for a new trial, I do not believe it necessary for the majority to address the issue of Cullen's cross-examination.

5. The defendant's offer of proof was that

If [Cullen], as an individual that initiated this proceeding ... based upon certain information in his possession, and then he learns that that information is incorrect, I think he has a duty ... to inform the police that these individuals in fact did not see anything. And if he didn't inform the police or Mr. Kogan, that is a concealment, in my opinion, of material evidence that has a bearing on his stance in the case.

The court responded:

I think it's simply too far out. We can talk about everybody's motives for everything they've done, but I'm concerned about the issues directly raised by the information, and I think it is just too far afield in terms of relevancy, and in view of the amount of time that we apparently are going into this—

After further objections and argument, the court again held:

[I]f you desire to impeach [these girls] on their own testimony about what they've told other people at different times and prior existing statements, I'll certainly allow that, but at this point I think we're just going too far afield, to try and take every statement that may have been made by Dr. Cullen or by any party and then finally say that someone said something different at a later time.

We could be in trial two months if we do that, and I am simply not going to do that. I'll certainly allow you to examine the witnesses who have direct knowledge of what occurred here, and I will allow you to impeach them by appropriate means under the law and allow you to call other witnesses after they have testified.

of questioning "after the basis for the questions is established by your own examination of the witnesses who would establish that. If you can establish that in your own case, I'll allow you to recall Dr. Cullen and ask him these questions."

To the extent that defense counsel was attempting to impeach the victims, who had not yet testified, this ruling was correct in that it provided for cross-examination of Cullen in rebuttal after the victims had testified. The defense could have recalled Dr. Cullen, but did not. To the extent that defense counsel was attempting to impeach the principal, this ruling was not reversible error because a trial court is permitted to limit questions related to irrelevant side issues. *United States v. Spivey*, 508 F.2d 146 (10th Cir.), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975). It was within the trial court's discretion to hold that details of the conflicting stories, given by children who never testified and were not victims named in charges against the defendant, were not relevant to the question of whether the defendant had committed the acts described in the information.[6] The limitation of "cross-examina-

tion of a witness concerning general credibility is within the sound discretion of the trial court." *People v. Evans*, 630 P.2d 94, 97 (Colo.App.1981).[7]

For these reasons, I believe the defendant was fairly tried and convicted by the trial judge sitting as the trier of fact. I would uphold the defendant's convictions.

I am authorized to say that Justice MULLARKEY joins in this concurrence and dissent.

---

6. CRE 402 provides for the exclusion of evidence which is not relevant. CRE 403 permits the court to exclude evidence after the judge has balanced considerations of undue delay and waste of time against the relevance of the evidence. 7B C.R.S. (1984). Such a ruling is within the trial court's sound discretion. *People v. Schwartz*, 678 P.2d 1000 (Colo.1984); *People v. Abbott*, 638 P.2d 781 (Colo.1981).

7. The trial court heard testimony which has not been mentioned in the majority opinion. At Kogan's trial, the judge heard testimony from Dr. Cullen, the current principal at Ora Oliver Elementary School, and John Gordon, the principal at that school from 1979 to 1981.

Gordon testified that during the 1979–'80 school year he "received a complaint from a parent about Mr. Kogan seating students on his lap, and I spoke with him in that regard." Gordon testified that he warned Kogan "that that should not happen again."

Gordon testified that in the 1980–'81 school year, he received a complaint from another parent that Kogan had been rubbing her daughter's

back in an inappropriate fashion. Gordon again warned Kogan, telling him that his conduct was "unprofessional" and "should not occur," and the student was removed from Kogan's classroom and transferred into another fourth grade class. Gordon also agreed that in 1981 he met with the incoming principal, Dr. Cullen, and told Cullen to "keep an eye on Ed [Kogan]."

Dr. Cullen testified that prior to Kogan's suspension in October 1982 he had "talked to Mr. Kogan twice previously in relation to touching students." One discussion was initiated when Cullen "saw a girl sitting on [Kogan's] lap." Another discussion was instigated at the request of the superintendent of schools who had been in the building and evidently observed Kogan's conduct. Cullen stated that he "was concerned that Mr. Kogan had been continuing to have contact that [he] considered inappropriate with female students in the classroom."